WHITNEY NAT. BANK *v.* PARKER *et al.* NEW ORLEANS NAT. BANK *v.* SAME. HIBERNIA NAT. BANK *v.* SAME.

*(Circuit Court, E. D. Louisiana. January 25, 1890.)*

1. EQUITY—ENJOINING COLLECTION OF TAXES—MULTIPLICITY OF SUITS.
   Where a bank is required by law to pay the taxes assessed on all its shares, and reimburse itself from its shareholders, it may sue to enjoin collection of taxes illegally assessed, as it stands in the relation of a trustee, and such suit will save multiplicity of actions.

2. NATIONAL BANKS—TAXATION OF SHARES BY STATE.
   Act La. 1888, § 27, providing that shares in banks shall be assessed to the shareholders, but requiring the bank to pay taxes so assessed, and authorizing it to collect the same from the shareholders, imposes a tax, not upon the bank, but upon its shares, as permitted by act of congress, providing that a state may determine the manner of taxing the shares of national banks located in the state.

3. EQUITY—PLEADING.

An averment in the bill that if a certain "contention is true, which is denied, then the said state law [specifying it,] is null and void, because it operates as a discrimination against the shareholder of national banks, in violation of the express terms of." Rev. St. U. S. § 5219, is sufficiently explicit to raise the issue whether there is in the act any discrimination prohibited by the act of congress.

4. NATIONAL BANKS—TAXATION OF SHARES—DEDUCTIONS.

Under Act La. 1888, § 27, relating to taxation of national bank shares, making no deduction for that part of the bank's property entering into their value which consists of non-taxable state and national securities, which deduction may, under the act, be made by individuals, a tax on national bank shares violates Rev. St. U. S. § 5219, prohibiting the assessment of such shares at a greater rate than moneyed capital in the hands of individual citizens, and it is immaterial that the same discrimination is made against other corporations.

5. INJUNCTION—ILLEGAL TAXATION—RESTRAINING COLLECTION OF EXCESS.

An injunction restraining collection of taxes on bank-shares, in such case, will be granted only as to the excess above taxes on other moneyed capital in the hands of individual citizens, and a reference may be ordered to ascertain the excess.

In Equity. Bills for an injunction.

*White & Saunders* and *E. H. McCaleb*, for complainants.

*Henry C. Miller*, *W. H. Rogers*, Atty. Gen., and *Carleton Hunt*, City Atty., for defendants.

Before PARDEE and BILLINGS, JJ.

PER CURIAM. These are suits brought to restrain the tax collecting officers of the state of Louisiana and the city of New Orleans from proceeding to collect certain taxes assessed against the shares in three national banks on the ground that they are assessed contrary to the provisions of law. They are brought by injunction bills on the equity side of the court.

The first objection urged to the complaints is that they are improperly brought on the equity side of the court, for the reason that there is a complete and adequate remedy at law. Of course, they cannot be maintained as equity suits unless they present a case which falls under some one of the recognized heads of equity jurisdiction. We think they present a case where the bank, charged by the statute of the state with the duty of paying the taxes assessed upon all the shares of its shareholders, is in the position of a trustee, and may ask the aid of a court of equity in defending its *cestuis que trust* from interference alleged to be wrongful. *Cummings* v. *Bank*, 101 U. S. 153, 156. We think, also, that the specific ground alleged in the bill, namely, to avoid a multiplicity of suits at law, is maintained by an examination of the case made by the bills. There are several aspects under either of which this ground in these cases is maintainable: *Firstly*, a suit in equity enables the complainant to join, as it has here, in a single suit, the officers of the state and those of the city, whereas at law there would have to be a separate suit against the officers of each; *secondly*, the decree in equity can enjoin all future trespasses, whereas a suit at law would have to be brought for each threatened collection; *thirdly*, the corporation, by bringing a single suit in equity, prevents the necessity of proceedings against each of its shareholders at law. We think, therefore, that the suit is properly brought on the equity side of the court.

The complaint urged by the bill is (1) that the tax is assessed upon the bank; and (2) that it violates the condition upon which congress has permitted the states to tax the shares of national banks, in that the tax is at a "greater rate than that upon other moneyed capital in the hands of individual citizens." The part of the statutes of Louisiana under which these questions arise are the twenty-seventh and twenty-eighth sections of Act 85 of 1888:

"Sec. 27. Be it further enacted," etc., "that no assessment shall hereafter be made under that name as the capital stock of any national bank, state bank, banking company, banking firm, or banking association, or of any corporation, company, firm, or association, whose capital stock is represented by shares, but the actual shares shall be assessed to the shareholders who appear as such upon the books, regardless of any transfer not registered or entered upon the books, and it shall be the duty of the president or other officer to furnish to the assessor a complete list of those who are borne upon the books as shareholders; and all taxes so assessed shall be paid by the bank, company, firm, association, or corporation which shall be entitled to collect the amounts from the shareholders or their transferees. All property owned by the bank, company, firm, association, or corporation which is taxable under section 1 of this act shall be assessed directly to the bank, company, firm, association, or corporation, and the *pro rata* of such direct property taxes, and of all exempt property, proportioned to each share of capital stock, shall be deducted from the amount of taxes assessed to that share under this section. Such assessment shall be made where the bank," etc., "is located, and not elsewhere, whether the shareholders reside there or not. Any president or other officer who shall refuse or fail to deliver said list to the assessor shall be guilty of a misdemeanor, and on conviction shall be punished by fine or imprisonment, or both, at the discretion of the court. Sec. 28. Be it further enacted," etc., "that no assessment shall be made of capital employed in trade under the name as heretofore, but merchandise or other property taxable under section one (1) of this act, owned by any person, association, firm, or company whose capital stock is not represented by shares, shall be assessed to the person, firm, association, or company having possession of the same, either in their own name, or as agent for some other named person or persons."

These sections were originally passed as one. Act 1880, No. 77, p. 102, § 48. The question as to whether the tax is not levied upon the corporation is, from its nature, not free from difficulty. In *New Orleans* v. *Houston*, 119 U. S. 265, 7 Sup. Ct. Rep. 198, the supreme court of the United States held that a tax levied under section 27 was a tax upon the corporation, and gave as the reason that, according to the statute, the tax was to be paid by the corporation irrespective of dividends out of which to make the payment, and with no means of repayment from the shareholder except by suit. In *Bank* v. *Bouny*, 32 La. Ann. 239, our own supreme court seems to have considered it to be a tax upon the bank; for while, on account of the charter of that bank, in that its dividends, by the statute, did not go to the shareholders, but were applied to pay the bonds issued and loaned by the state to the bank as its capital, they held the tax could not be levied upon the bank, they assume that the section 27, if applicable, would work out the result of a tax on the bank. But the act of congress permitting the taxing of national bank shares by the states contains a further permission, that the states

"may determine and direct the manner and place of taxing all the shares of national banking associations located within the state." In the case of *New Orleans* v. *Houston* the question was with reference to the meaning of a constitutional contract which exempted the corporation from all taxes, and whether, without violating it, a tax could be levied under section 27, and, the corporation not being a bank or banking association, the last paragraph of the section had no force in solving the question; whereas in this case the question, though under the same section, is in a very different aspect, namely, whether the permission to tax the shares has been followed. These considerations, viewed in the light of the adjudications of the supreme court, lead us to the conclusion that the act of 1888 imposes a tax upon the shares, and not upon the corporation, where the question is propounded with reference to the permission given by the act of congress to tax the shares.

As to the objection that the tax upon the shares is at a greater rate than that upon other moneyed capital in the hands of individual citizens, in a constitutional amendment ratified at the general election of 1888 it is provided that—

"There shall also be exempt from taxation and license, for a period of twenty years from the adoption of the constitution of 1879, the capital and machinery and other property employed in the manufacture of textile fabrics; leather, shoes, harness, saddlery, hats, flour, machinery, agricultural implements, manufacture of ice, fertilizers, and chemicals; and furniture and other articles of wood, marble, or stone; soap, stationery, ink, and paper; boat-building; and chocolate: provided that not less than five hands are employed in any one factory."

It appears by the affidavits and exhibits that the capital employed in manufactures exempted under the above-quoted provision in the city of New Orleans alone exceeds the amount of $10,000,000; that the total national bank capital in the city of New Orleans is, in round numbers, $3,500,000, and the total capital of all the banks, in round numbers, $5,000,000. The reports of the assessors show that in the city of New Orleans the amount of money loaned, etc., taxable under the laws of the state for the year 1889, is, in round numbers, $5,600,000. These figures would include a large proportion of the manufacturing and banking capital, money at interest, throughout the state. On this showing, there is a discrimination against capital invested in national bank shares, but whether it is of such a character, or so considerable, as to be prohibited by the limitation established by congress, as that limitation has been construed by the supreme court, is doubtful. See *Boyer* v. *Boyer*, 113 U. S. 689, 5 Sup. Ct. Rep. 706; *Mercantile Bank Case*, 121 U. S. 149, 7 Sup. Ct. Rep. 826.

We go on to consider the question whether there is, in the statute under which this tax is levied, any discrimination which is prohibited by the act of congress. The act of congress is found in section 5219 of the Revised Statutes:

"Sec. 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state

within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions,—that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed." 13 St. at Large, p. 111, § 41; 15 St. at Large, p. 34.

It was insisted by the solicitors of the defendants that this ground of complaint, though presented in the argument, is not explicitly made by the bill. We think it is. The bill avers—

"That if said contention is true, which is denied, then the said state law, to-wit, the Act No. 85 of 1888, is null and void, because it operates as a discrimination against the shareholders of national banks, in violation of the express terms of section 5219 of the Revised Statutes of the United States."

The claim on the part of the complainant is that under the act of 1888 the discrimination against national banks consists in this, that they are taxed upon a valuation arrived at by the market value, without deducting the amount of exempt property owned by the bank, whereas all moneyed capital in the hands of the individual citizen is by that act reduced by taking out all exempt property. National banks are taxed under section 27. Moneyed capital, not represented by shares, or in the hands of individual citizens, is taxed under section 28. It has been settled by the supreme court of the state (*Bank* v. *Board*, 41 La Ann. 181, 5 South. Rep. 408) that, under the state statute of 1888, national banks are entitled to no deduction from the valuations of their shares, by reason of their capital being in whole or part invested in any species of property, unless the same be exempt by the constitution of 1879; and this constitution would exempt none of the securities held by these complainants except the shares in manufacturing companies. In that case the question of equality of taxation on bank-shares, and moneyed capital in the hands of individuals, does not appear to have been presented or considered. It was admitted by the solicitors for the defendants that in case of an individual there would be an exemption, under section 28, of all bonds of the United States, and of all state and city securities which under the state law are exempt. Indeed, it is difficult to see how, if the tax is to be assessed upon the capital of individuals or partnerships in the manner required by section 28, *i. e.*, not upon the aggregate amount invested in their business, but upon each item of property *seriatim*, each security which is by valid state statute exempt from taxation would not be necessarily excluded. So far as federal securities are concerned, the exemption springs from the fact that they can be taxed only in the manner permitted by congress, and congress has given no permission to tax them directly. So far as the state and city securities are concerned, the exemption rests upon the statutory contract of the legislature of the state, which the supreme court of the United

States has always held was, under the constitution of the United States, irrepealable either by legislative enactment or constitutional provision. It would follow that, so far as individuals or partnerships are concerned, who are to be taxed under section 28, the securities constituting their capital, and exactly like the most of those held by complainants, and constituting their capital, either wholly or in part, would be exempt. This is the alleged inequality, wrought out by the act of 1888, which is complained of in the bills of complaint. In this class of cases, and considering what is meant by the terms "moneyed capital in the hands of individual citizens," the supreme court has been explicit in distinguishing such capital from other personal property. In *Bank* v. *Britton*, 105 U. S. 324, they say:

"The act of congress does not make the tax on personal property the measure of the tax on bank-shares in the state, but the tax on moneyed capital in the hands of the individual citizens. Credits, money loaned at interest, and demands against persons or corporations are more purely representative of moneyed capital than personal property, so far as they can be said to differ."

Undoubtedly there may be much personal property exempt from taxation without giving bank-shares a right to similar exemption, because personal property is not necessarily moneyed capital; but the rights, credits, demands, and money at interest mentioned in the Indiana statute, from which *bona fide* debts may be deducted, all mean moneyed capital invested in that way. And in the case of *Mercantile Bank* v. *New York*, 121 U. S. 149, 7 Sup. Ct. Rep. 826, they reaffirm this distinction, so that that tribunal has declared that, while national bank securities cannot be taxed when held as other personal property is, they may be indirectly, when forming a portion of moneyed capital, for the reason that, for the purpose of the application of the limitation, moneyed capital is one thing, and other personal property another. Now section 28 of the act of 1888, as far as shares in national banks are concerned, taxes them as an undeducted element in that which goes to make their market value, but, so far as all moneyed capital held by individual citizens is concerned, by adopting a different system of valuation, and imposing no tax save upon the various things or elements which constitute capital, allows and necessitates the same securities to be treated as personal property other than moneyed capital, and thus excludes them from taxation. Complainants' grievance is then narrowed down to this: According to the act of 1888, under which this tax is levied, all moneyed capital employed in any business in the state, not held in shares, by the statute is allowed the exemption of non-taxable property. The shares of national banks are not allowed any such exemption; that is to say, all moneyed capital except that held by shares before it is taxed has excluded, or taken out from it, all national, city, and state securities. The valuation of shares in national banks, and all other moneyed capital held in shares, is assessed without any such exclusion or reduction. There is then a manifest discrimination between the rate of tax on shares in national banks and that on all other moneyed capital in the hands of individuals and partnerships.

There remains, then, the question whether it makes any difference that the shares in all corporations other than national banks are subject to the adverse discrimination as well. The yard-stick or standard established by congress is moneyed capital in the hands of individual citizens, and it is no answer to the objection that the shares of other corporations are discriminated against as well; for it is not shares in corporations, not moneyed capital held by corporations, but moneyed capital in the hands of individual citizens, which is the test. Under the statute of 1888, all individuals and partnerships, even those engaged in the business of banking, all moneyed capital in the hands of individual citizens, may have the exemption which the statute denies to national banks. But even if we were to treat the limitation of congress as being other moneyed capital, and strike out the words "held by individual citizens," the restriction would even then have been violated; for it could hardly be maintained that it was intended by congress to subject national banks to a greater rate of taxation than was levied upon the aggregate capital of individuals and partnerships employed in all branches of business and trade. But it was urged by the learned solicitors that the supreme court of the United States has in several cases decided that the shares of a national bank might be taxed without any deduction, from the fact that its capital was invested in federal securities. The answer to this suggestion is that, while it is true that federal bonds may be indirectly taxed, though they form a portion of the bank's capital, they can be taxed only where they are subject to a similar tax when forming the moneyed capital in the hands of individual citizens. It is conceded by the complainants that federal bonds held by a national bank are taxable as part of its capital, and are not to be deducted unless they would be in the case of other moneyed capital employed by individual citizens; and it is urged that by the statute they are to be deducted in the cases where the capital employed constitutes a large and considerable portion, if not the majority, of the individual citizen's capital employed in his business throughout the state. The fatal objection is not that the federal or state or city securities are not deducted, but that they are not deducted from the shares, while they are deducted from other moneyed capital. The inequality, not simply the omission, of the deduction, is the ground of complaint. Many cases are cited. They are almost all referred to or summarized in *Mercantile Bank* v. *New York*, 121 U. S. 149, 7 Sup. Ct. Rep. 826. These cases hold that federal securities may be taxed as part of capital, but subject to the same rule of equality as other capital; that the legislature may exempt property without violating the limitation of congress upon the taxing power of the states; that the court will not consider the limitation violated when a very inconsiderable amount of property only was subjected to a less rate of taxation; and that the inequality prohibited by congress may consist in valuation, provided it works practically a discriminating rate of tax. Most of the cases have presented the question of discrimination between the national banks and other corporations. In these cases the court has had to resort to analogies or parallelisms, and has sometimes inquired into the nature of the

business of the corporations more favorably dealt with. But, wherever the question has come before the court as to discrimination between the manner of getting at the valuation of the shares, and the manner of getting at the value of moneyed capital actually in the hands of individual citizens, the supreme court has simply compared the two methods, and wherever there was a difference which made the tax higher, that is, when the excess was either in the literal rate, or in the valuation upon the bank-shares, has decided against the tax. The case of *Boyer* v. *Boyer*, 113 U. S. 689, 5 Sup. Ct. Rep. 706, is a forcible illustration of the views of that tribunal. See, also, *People* v. *Weaver*, 100 U. S. 539; *Pelton* v. *Bank*, 101 U. S. 143; *Cummings* v. *Bank*, Id. 153; *Supervisors* v. *Stanley*, 105 U. S. 305; and *Bank* v. *Britton*, Id. 323. In *Boyer* v. *Boyer*, 113 U. S. 701, 5 Sup. Ct. Rep. 712, the court states the principle which harmonizes all these decisions. That principle they state as follows:

"The exemptions in favor of other moneyed capital appear to be of such a substantial character in amount as to take the present case out of the operation of the rule that it is not absolute equality that is contemplated by the act of congress,—a rule which rests upon the ground that exact uniformity or equality of taxation cannot, in the nature of things, be expected or attained under any system. But as substantial equality is attainable, and is required by the supreme law of the land, in respect of state taxation of national bank shares, when the inequality is so palpable as to show that the discrimination against capital invested in such shares is serious, the courts have no discretion but to interfere."

The ground upon which discrimination is established by the act of 1888 is that from the shares of the national banks there is not the proportionate deduction for that part of its property entering into their market value which consists of non-taxable securities, whereas from the value of all the moneyed capital in the hands of the individual citizen it is by the statute deducted. The case is controlled in principle by *People* v. *Weaver*, 100 U. S. 547. In *Van Allen* v. *Assessors*, 3 Wall. 573, 581, the court dealt with the question whether an inequality which resulted from the fact that the shares in national banks being taxed as shares, and state banks through their capital, was a violation of the limitation imposed by congress which we are considering. The court held it was, and for the reason that the state banks would be favored, in that "the bonds of the United States, which are exempt from state taxation," would be deducted from the capital. That is, that the manner of levying the tax, in order to be equal, must allow to the national banks, and to that moneyed capital, which is made the standard, the same right to deduct the amount of federal securities. The case made by the bills of complaint, founded upon the statute of 1888, is that of a substantial discrimination; for the statute separates, and subjects to one rule of taxation, all moneyed capital not held in shares, and the capital of banks or corporations held in shares to another rule.

We are of opinion, then, that there is a discrimination against the shares of national banks which is prohibited by the act of congress, as construed and applied by the United States supreme court. But it does not follow that, because the tax is in excess of what it should have been

under the limitation established by the congress, therefore the whole tax may be enjoined. That which is due must be first paid or tendered. This rule has been laid down by the supreme court. *State Railroad Tax Cases,* 92 U. S. 617.

We are of the opinion that on the case made the complainants are entitled to an injunction against the excess of taxation resulting from the excessive assessments against their respective shareholders, and perhaps to the full extent claimed in the bills. A reference will be the most satisfactory method of ascertaining the reduction, by reason of exempt property held by the banks. Each complainant is entitled to claim on the valuations as made by the assessors under the views herein expressed; and, unless counsel agree as to the proper reduction on the showing already made, such reference will be ordered prior to issuing injunction *pendente.*