NATIONAL BANK OF DETROIT *v.* CITY OF DETROIT.

SAME *v.* COUNTY OF WAYNE.

1. TAXATION—RECOVERY OF OVERPAYMENT—PROTEST.
   In action of assumpsit to recover overpayment of taxes, recovery *held*, properly limited to taxes paid under protest.

2. SAME—VOLUNTARY PAYMENT.
   A voluntary payment of a tax, even though it be void, bars subsequent recovery.

3. SAME—INVESTMENT IN FEDERAL RESERVE BANK STOCK—DEDUCTION FROM CAPITAL, SURPLUS AND UNDIVIDED PROFITS.
   Entire investment by national banking corporation in stock in Federal reserve bank which represented percentage of capital stock and surplus required by Federal statute as a condition precedent to doing business *held*, allowable as a deduction from capital stock, surplus and undivided profits since it was made when bank had no deposits and could be traced with reasonable certainty to above funds (12 USCA, § 282, 1 Comp. Laws 1929, § 3396, subd. 8, as amended by Act No. 94, Pub. Acts 1931).

4. SAME—EXEMPTED INVESTMENT—STATEMENT TO ASSESSORS.
   Bank's statement to assessors which claimed deduction for entire amount of tax-exempt investment of capital, surplus and undivided profits and subsequent hearings disclosed source from which investment was made *held*, sufficient to require determination by city board of review exempting such investment from tax.

5. SAME—BOARD OF REVIEW.
   The board of review of tax assessments, in making a determination of a tax, acts in a *quasi*-judicial capacity and, while it is an administrative body, it cannot make an arbitrary ruling not warranted by the uncontroverted facts presented.

6. SAME—PREFERRED BANK STOCK.
   The tax law contains no specific provision in regard to valuation of preferred stock in banks differentiating from other stock therein.

7. SAME—ALLOCATION OF TAX-EXEMPT INVESTMENT OF BANK CAPI-
TAL, SURPLUS AND UNDIVIDED PROFITS.

Entire investment of percentage of capital of national banking
corporation in tax-exempt Federal reserve bank stock as re-
quired by law may not be wholly allocated to common' stock
in determination of tax assessment, where preferred stock is
owned by a non-taxable entity, although actual funds for tax-
exempt investment came from sale of common stock (1 Comp.
Laws 1929, § 3396, subd. 8, as amended by Act No. 94, Pub.
Acts 1931).

8. SAME—PARTIES—ACTION TO RECOVER OVERPAYMENT ON BANK
STOCK.

Bank *held*, proper party to bring assumpsit to recover overpay-
ment of taxes on capital stock although law provides it should
be assessed to owners, since the cashier is charged by law with
payment of the taxes and permitted to charge amount so paid
to owner (1 Comp. Laws 1929, § 3402, subd. 3, § 3437).

9. COSTS—APPEAL BY BOTH PARTIES—PUBLIC QUESTION.

No costs are allowed on appeal of action to recover overpayment
of taxes on bank stock upon reduction of judgment where
both parties appeal and question involved is a public one.

Appeal from Wayne; Campbell (Allan), J.  Sub-
mitted June 19, 1935.  (Docket Nos. 108, 109, Calen-
dar Nos. 38,434, 38,435.)  Decided September 9, 1935.

Separate actions of assumpsit by the National
Bank of Detroit, Michigan, against the City of De-
troit, a municipal corporation, and Charles L. Wil-
liams, treasurer of the city of Detroit, and the Coun-
ty of Wayne, a municipal corporation, and Jacob P.
Sumeracki, treasurer of the county of Wayne, to
recover overpayment of personal property taxes.
Cases consolidated for trial and appeal.  Judgments
for plaintiff.  Defendants appeal.  Plaintiff cross-
appeals.  Modified and remanded.

*Bulkley, Ledyard, Dickinson & Wright* (*Robert E.
McKean,* of counsel), for plaintiff.

*Walter Barlow* (*Raymond J. Kelly,* of counsel), for defendants City of Detroit and Williams.

*Duncan C. McCrea,* Prosecuting Attorney, and *Sweetman G. Smith,* Assistant Prosecuting Attorney, for defendants County of Wayne and Sumeracki.

BUTZEL, J. In compliance with the provisions of the law (12 USCA, § 282; Treasury Document No. 2961, 1928, chap. 1, § 12), the National Bank of Detroit, plaintiff, upon its organization subscribed for an amount of stock in Federal reserve bank equal to six per cent. of its capital and surplus, and on March 21, 1933, paid $675,000, one-half of its subscription. It was required to do this before the comptroller of currency would issue a certificate authorizing it to begin business. The money paid for this Federal reserve bank stock came from the General Motors Corporation, which had paid in on that same day $12,500,000 for all of the common stock in plaintiff corporation. This amount paid was allocated as follows on the books of the corporation: $5,000,000 in full payment of the common stock; $5,000,000 to surplus; and $2,500,000 to undivided profits. On the following day, March 22, 1933, the Reconstruction Finance Corporation paid in the sum of $12,500,000, for which it received an equal amount of preferred stock. Plaintiff did not receive deposits until March 24, 1933.

On April 1, 1933, the bank had received deposits amounting to $29,629,019.62. It had also invested $31,620,695.61 in government bonds. The Federal reserve bank stock, the government bonds and the preferred stock in plaintiff corporation in the hands of the governmental agency are tax exempt. In submitting its statement to the board of assessors of the

city of Detroit showing its condition as of April 1, 1933, so as to determine the value of its common stock for the purpose of taxation, plaintiff deducted the $675,000 invested in Federal reserve bank stock in its entirety from its capital, surplus and undivided profits, claiming that such procedure was in accord with Act No. 94, § 8, subd. 8, Pub. Acts 1931, which amends former acts referred to in the title of Act No. 94. We quote the pertinent portions of this paragraph:

"All shares in banks and trust companies which shall be doing business in this State under whatsoever authority organized shall be assessed and taxed as herein provided. The said shares shall be assessed at the cash value of each after deducting the per share portion of * * * (b) the value of all securities belonging to said corporation which *represent the investment of capital, surplus or undivided profits* and not of the proceeds or consideration of debts and liabilities of said corporation and are exempt from general taxation by virtue of any law of this State or of the United States. To the extent the assessing officer shall be *unable otherwise to determine with reasonable certainty, the amount of such exempt securities which represent the investment of the capital, surplus and undivided profits* of the corporation shall be deemed to be that proportion thereof which the capital, surplus and undivided profits of said corporation bear to its capital, surplus, undivided profits and deposits excluding from all elements of such calculation an amount equivalent to such exempt securities of which the source of the funds invested therein shall have been otherwise determined."

The assessors, board of review and State tax commission, however, held that the $675,000 of Federal reserve bank stock should be figured in the same manner as the other tax-exempt securities subse-

quently purchased by the bank, and not be deducted in its entirety as a capital asset from the capital, surplus and undivided profits; that the deduction should be determined in accordance with the formula set forth in the quoted portion of the statute providing for the method of calculation as to such tax-exempt securities of which the source of funds invested therein could not be determined with reasonable certainty.

While the controversy between the bank and the tax authorities was still pending, the bank paid without protest one-half of the city taxes due July 15, 1933, based on the incorrect valuation of the assessors. It, however, paid the second half of the city taxes in December, 1933, under protest. The amount of the city's assessment was adopted for the levying of the State and county taxes for 1933, which also were paid under protest by the bank. It thereupon began two suits, one against the city of Detroit and its treasurer, the other against the county of Wayne and its treasurer, to recover the portion of the taxes paid on the over-assessment. The trial judge held that plaintiff could not recover the entire amount of $12,599.07, the overpayment of the city taxes claimed, but only the half of this amount, that being the over-tax on the installment paid under protest, together with the five per cent. interest. He also held that it was entitled to recover the entire overpayment amount to $3,059.75 paid for State and county taxes to the county of Wayne. Defendants appeal in each case. They were heard together, one opinion rendered, and again submitted together in this court and this opinion covers both cases.

The trial judge properly limited recovery to only the taxes paid under protest. A voluntary payment of tax, even though it be void, is a bar to a sub-

sequent recovery. *Gage* v. *City of Saginaw,* 128 Mich. 682; *School District No. 6* v. *School District No. 5,* 255 Mich. 428.

The trial judge properly held that the investment of the $675,000 could be determined with reasonable certainty to have been purchased from the capital, surplus and undivided profits. The investment was made when the bank had no deposits and its only funds were those paid in for capital stock. It was a condition precedent to its right to do business and the bank was entitled to deduct the full amount. Inasmuch as the investment of the stock in the Federal reserve bank could be traced with reasonable certainty to capital, surplus and undivided profits and it was not made from any part of the deposits, the deduction claimed should have been allowed in its entirety.

Some question is raised as to whether plaintiff's statements to the assessors distinctly showed the deductions claimed. While it is true that the statements did not show the source of the funds with which the investment was made, it did claim exemption for the entire amount and at the subsequent hearings, as shown by the record, plaintiff fully and completely disclosed the source from which the investment was made. In making a determination of the tax, the board acts in a *quasi-*judicial capacity. While it is an administrative board, it must weigh the facts as presented and cannot make an arbitrary ruling not warranted by the uncontroverted facts presented. See *In re Appeal of Hoskins Manfg. Co.,* 270 Mich. 592.

Although the trial court was correct in ruling that the $675,000 of Federal reserve stock should be deducted in its entirety, it was wrong in holding that this deduction should be allocated only to the

common stock. This question was not argued in the court below but was suggested by this court and referred to in plaintiff's supplemental brief. Plaintiff shows that the Federal reserve bank stock was purchased with the funds supplied by the owner of the common stock, a day prior to the receipt of payment for the preferred stock. While a day intervened between the payments, they were made at substantially the same time. The investment in the Federal reserve bank stock was not made on the basis of the common stock and surplus, but on that of the entire capital stock, both common and preferred, and surplus. The pertinent provisions of the statute read:

"The cash value of *each* share shall on the absence of other satisfactory evidence be deemed to be the amount determined by adding together the capital, surplus and undivided profits, deducting therefrom the aggregate for all shares of the deductions aforesaid and dividing the result by the number of shares into which the *capital stock is divided.*" Act No. 94, § 8, subd. 8, Pub. Acts 1931.

The tax law contains no specific provision in regard to preferred stock in banks. After deduction of liabilities, it is preferred to the extent of the first $12,500,000, plus accrued dividends, if it is cumulative, the common stock being entitled to the balance aggregating on April 1, 1933, also to $12,500,000, or thereabouts. There is nothing in the quoted provisions to warrant an allocation of a deduction entirely to common stock, even though actual payment was made out of funds derived from the sale of common stock. If, in the instant case, the preferred stock were owned by a private individual, so that it would be taxable, the plaintiff bank might not argue so strenuously that the $675,000 investment should be deducted only from the common stock, without

allocating any of it to the preferred stock. It should not be allowed to profit because its preferred stock happens to be owned by a non-taxable entity, by claiming that the deduction should only be made from its taxable stock. The Federal reserve stock was a capital asset, and cannot be allocated to either the common or preferred stock, but must be considered as an investment made from the capital structure supplied by both kinds of stock. Inasmuch as the capital was substantially the same on April 1, 1933, as it was the week before with neither impairment or increase in the capital structure, the deduction should be divided in half, the same as the assessors did in regard to the tax-exempt securities purchased after deposits were made.

On the first installment of the city taxes paid without protest, there can be no recovery. Plaintiff is only entitled to recover one-half of the over-tax on the second installment claimed by the plaintiff and allowed by the lower court, with interest from the time of payment; and one-half of the over-tax on State and county taxes allowed by the lower court also with interest.

The claim has been made that plaintiff is not the proper party in interest and that suit should have been brought by the owner of the common stock. While the law does provide that all shares in banks should be assessed to owners, 1 Comp. Laws 1929, § 3402, subd. 3, it further imposes the duty on the cashier of the bank to pay the taxes on the shares and charge the amount so paid to the owner. 1 Comp. Laws 1929, § 3437. The bank becomes liable for the payment of the taxes, with the right to obtain repayment from its stockholders. *Eyke v. Lange,* 104 Mich. 26. If it wrongfully paid taxes illegally exacted under protest, the action for recovery would not be against its stockholders but

against the political subdivision to which the tax had been paid. *Cummings* v. *Merchants' National Bank,* 101 U. S. 153, 156; *Security National Bank* v. *Young,* 55 Fed. (2d) 616 (84 A. L. R. 100); *Lenawee County Savings Bank* v. *City of Adrian,* 66 Mich. 273, 275; *McFarland* v. *Central National Bank of Topeka, Kan.* (C. C. A.), 26 Fed. (2d) 890.

The cases are remanded to the lower court where judgments may be entered in accordance with this opinion. As both parties have appealed and the question is a public one, no costs will be allowed.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.