MANUFACTURERS NATIONAL BANK OF DETROIT *v.* CITY
OF DETROIT.

1. Taxation—National Banks—Capital Stock—Cashier's Duties.
   A national bank, located within this State, is legally bound to
   pay a tax levied upon the shares of its capital stock, since the
   cashier is charged by law with the payment of the taxes and
   permitted to charge the amount so paid against the shares of
   stock so taxed (1 Comp. Laws 1929, § 3437).

2. Same—Illegal Exactions on Banks—Action at Law—Parties.
   Action of bank for recovery of illegally exacted taxes which it
   had paid under protest would be an action at law, not against
   its stockholders, but against the political subdivision to which
   the tax had been paid.

3. Same—Capital Stock of Bank—Adequacy of Remedy at Law
   for Illegal Assessment—Injunction.
   A bank which has paid an illegal assessment for taxes on its
   capital stock does have a complete and adequate remedy at
   law, hence is not entitled to injunction to restrain the collec-
   tion of taxes for the payment of which it was liable under the
   statute either because remedy at law was inadequate or to
   avoid a multiplicity of suits (1 Comp. Laws 1929, §§ 3437,
   3507).

4. Same—Injunction—Irreparable Injury.
   Since it is a matter of great importance in the administration of
   public affairs, the levy or collection of taxes should not be re-
   strained by injunction, at least other than in exceptional cases
   where denial of injunctive relief would result in irreparable
   injury (1 Comp. Laws 1929, § 3507).

5. Same—Payment Under Protest—Injunction—Adequacy of
   Remedy at Law.
   Record in suit by bank to restrain collection of taxes on its
   capital stock *held*, without an indication that plaintiff would
   suffer any unusual hardship in paying tax under protest and
   thereafter proceeded in an action at law to recover amount

paid if protest made were meritorious, hence, decree dismissing bill because remedy at law was adequate was proper (3 Comp. Laws 1929, §§ 3437, 3444 as amended, 3507).

SHARPE and POTTER, JJ., dissenting.

Appeal from Wayne; Nicol (Henry G.), J. Submitted April 20, 1938. (Docket No. 34, Calendar No. 39,930.) Decided June 30, 1938.

Bill by Manufacturers National Bank of Detroit against City of Detroit, a municipal corporation, its treasurer, County of Wayne, a municipal corporation, its treasurer, and Auditor General of State of Michigan for declaration of rights, interpretation of a statute, to allow exemption from taxation of certain investments, to set taxable cash value of shares and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Bodman, Longley, Bogle, Middleton & Farley,* for plaintiff.

*Raymond J. Kelly,* Corporation Counsel, and *Walter Barlow,* Chief Assistant Corporation Counsel, for City of Detroit and its treasurer.

NORTH, J. The circuit judge dismissed plaintiff's bill in chancery upon the filing of which an injunction was issued to restrain the collection of taxes for the payment of which plaintiff was liable under the statute. Dismissal of the bill of complaint was on the ground that plaintiff had an adequate remedy at law. It may also be fairly inferred that the ruling was prompted by the statute in this State which forbids the issuing of an injunction to stay the collection of taxes. The general tax law of this State provides:

"No injunction shall issue to stay proceedings for the assessment or collection of taxes under this act." 1 Comp. Laws 1929, § 3507 (Stat. Ann. § 7.168).

I am not in accord with the conclusion of Mr. Justice SHARPE that the decree of the circuit judge should be reversed, this being done on the ground that plaintiff did not in fact have an adequate remedy at law. There can be no question but that plaintiff was legally bound to pay a tax levied upon the shares of its capital stock. It is so provided by statute and we have so held in recent decisions.

"In case of taxes assessed upon the shares of the capital stock of any bank he (the tax collector) shall call upon the cashier of such bank and demand payment thereof, and thereupon it shall be the duty of such cashier to pay the same, and charge the amount so paid against the shares of stock so taxed." 1 Comp. Laws 1929, § 3437 (Stat. Ann. § 7.90).

In *National Bank of Detroit* v. *City of Detroit,* 272 Mich. 610, 617, under the above statute, this court held:

"The bank becomes liable for the payment of the taxes, with the right to obtain repayment from its stockholders. *Eyke* v. *Lange,* 104 Mich. 26. If it wrongfully paid taxes illegally exacted under protest, the action for recovery would not be against its stockholders but against the political subdivision to which the tax had been paid."

Further, in *National Bank of Detroit* v. *City of Detroit, supra,* we definitely held that in an action at law brought by the bank itself for the recovery of taxes assessed on shares of its capital stock the bank could recover from the city the amount paid if the taxes were illegally assessed and paid by the bank under protest. In support of this holding we cited *Security National Bank of Watertown* v. *Young* (C. C. A.), 55 Fed. (2d) 616 (84 A. L. R. 100); *McFarland* v. *Central National Bank of Topeka,*

*Kan.* (C. C. A.), 26 Fed. (2d) 890. It follows that in this jurisdiction the bank does have a complete and adequate remedy at law and the holding of the trial court to this effect should be affirmed.

In arriving at an opposite conclusion my Brother has cited the cases hereinafter noted, but it seems to me an examination of these cases discloses that they are clearly distinguishable and not in point in view of the law of this jurisdiction.

*Cummings* v. *National Bank,* 101 U. S. 153, 157, is perhaps the principal case relied upon; but in this case it is important to note that the Supreme Court of the United States pointed out the express provision of the law of the State from which the case came by saying:

"The statute also answers another objection made to the relief sought in this suit, namely, that equity will not enjoin the collection of a tax except under some of the well-known heads of equity jurisdiction, among which is not a mere overvaluation, or the illegality of the tax, or in any case where there is an adequate remedy at law. *The statute of Ohio expressly provides for an injunction against the collection of a tax illegally assessed, as well as for an action to recover back such tax when paid, showing clearly an intention to authorize both remedies (legal and equitable) in such cases."*

Decision in *Public National Bank of New York* v. *Keating* (C. C. A.), 47 Fed. (2d) 561 (81 A. L. R. 497), and *Whitney National Bank* v. *Parker,* 41 Fed. 402, cited by my Brother, seems to be based largely on the *Cummings Case* just above noted and distinguished; and in the first of the two cases last above cited it is said of the jurisdiction in which the case arose, "There is no adequate remedy in the State courts at law. * * * By this suit in equity, a multiplicity of suits will be avoided." Also in the *Whit-*

*ney National Bank Case, supra,* the same reason for equity taking jurisdiction to avoid a multiplicity of suits is urged. Obviously under the law of Michigan a suit in equity is not necessary to avoid a multiplicity of suits because the whole matter can be adjudicated in a single suit at law brought by the bank.

The remaining case cited by my Brother is *Knopf* v. *First National Bank of Chicago,* 173 Ill. 331 (50 N. E. 660). In this case the Illinois court recognized the right of equity to enjoin the collection of taxes in that State where the levy of such taxes was without authority and therefore in violation of the rights of every taxpayer in the tax district. Obviously under such circumstances the controverted question could not be adjudicated in a single suit at law, as in the instant case. Because of the situation with which it was confronted, the Illinois court said:

"In conformity with this principle this court has constantly recognized the right of an individual or individuals to restrain an entire tax that is without authority and void."

Since it is a matter of great importance in the administration of public affairs (*City of Birmingham* v. *Oakland County Supervisors,* 276 Mich. 1), the levy or collection of taxes should not be restrained by injunction, at least other than in exceptional cases where denial of injunctive relief would result in irreparable injury.

"When a tax as assessed is only a personal charge against the party taxed, or against his personal property, it is difficult in most cases to suggest any ground of equitable jurisdiction. Presumptively the remedy at law is adequate. If the tax is illegal and the party makes payment, he is entitled to recover back the amount. The case does not differ in this regard from any other case in which a party is compelled to pay

an illegal demand; the illegality alone affords no ground for equitable interference, and the proceedings to enforce the tax by distress and sale can give none, as these only constitute an ordinary trespass. To this point the decisions are numerous (citing many decisions including those of this court). The exceptions to this rule, if any, must be of cases which are to be classed under the head of irreparable injury; * * * where the recovery of damages would be inadequate redress. A case would be exceptional, also, if under the law no remedy could be had to recover back moneys paid." 4 Cooley Taxation (4th Ed.), § 1641.

See, also, *City of Detroit* v. *Wayne Circuit Judge,* 127 Mich. 604; *Henry* v. *Gregory,* 29 Mich. 68. Especially should the law as above stated be followed in this jurisdiction wherein by statute it is provided that an injunction shall not issue to stay proceedings for the assessment or collection of taxes. 1 Comp. Laws 1929, § 3507 (Stat. Ann. § 7.168). Nothing appears in this record indicating that plaintiff would have suffered any unusual hardship if, as it had a right to do, it had paid the tax under protest and thereafter proceeded in an action at law to recover the amount paid if the protest made were meritorious.* Aside from appellant's erroneous contention that it did not have an adequate remedy at law, there is nothing in this record to sustain the claim that equity has jurisdiction. The circuit judge was right in concluding that plaintiff had an adequate remedy at law and in entering a decree dismissing its bill of complaint. The decree is affirmed, with costs to appellees.

WIEST, C. J., and BUTZEL, BUSHNELL, CHANDLER, and MCALLISTER, JJ., concurred with NORTH, J.

---

* See 1 Comp. Laws 1929, § 3444, as amended by Act No. 32, Pub. Acts 1931.—REPORTER.

Sharpe, J. (*dissenting*). Plaintiff filed a bill of complaint under the declaratory judgment statute (Act No. 36, Pub. Acts 1929 [3 Comp. Laws 1929, § 13903, Stat. Ann. § 27.501]) for the purpose of contesting the propriety of the method used in the assessment and levy of certain personal property taxes for the year 1934 against the shareholders of plaintiff bank.

The following statement of facts as found by the trial judge is sustained by the evidence introduced when the cause came on for trial:

"Plaintiff, the Manufacturers National Bank of Detroit, was organized under the laws of the United States as a national banking association. Its original capital, consisting of $3,000,000, divided into 60,000 shares of the par value of $50 each and a paid in surplus of $1,500,000, and paid in undivided profits of $750,000, making a total invested capital of $5,250,000, was paid in and deposited with the Detroit branch of the Federal Reserve Bank of Chicago, on July 28, 1933, and on that date the bank received its certificate of authority from the comptroller of the currency to commence business, but it did not receive any deposits or incur other debts or liabilities prior to August 10, 1933.

"Pursuant to the requirements of 12 USCA, § 282, at the time it received its certificate of authority to commence business, and on July 28, 1933, it subscribed 6 per cent. of the amount of its capital and surplus in stock of the Federal Reserve Bank of Chicago, before it had received any deposits or incurred any other debts or liabilities; and pursuant to law and regulations of the comptroller of the currency actually paid for half of that stock out of its original capital money then on deposit with the Detroit branch of the Federal Reserve Bank of Chicago, on July 28, 1933, the sum of $135,000. It still owns such stock so bought and paid for on last mentioned date.

"On August 1, 1933, and still prior to the time that it had received any deposits or incurred any indebtedness or other liability, plaintiff purchased $5,000,000 par value of United States Treasury Bills, dated May 24, 1933, and maturing August 23, 1933, for which it paid, out of its original capital money, deposited with the Detroit branch of the Federal. Reserve Bank of Chicago, at the time it received its certificate of authority to commence business, the sum of $4,999,270.85.

"The specific United States Treasury Bills of the par value of $5,000,000, which plaintiff had purchased out of its original capital money, and which were identified by numbers, became due on August 23, 1933, and on that date were collected by the Union Trust Company of Pittsburgh, and the proceeds thereof, amounting to $5,000,000, were deposited in a new account in said Union Trust Company of Pittsburgh and known as the Manufacturers National Bank of Detroit Capital Fund Account, such proceeds not having been previously credited to any other account of said bank.

"On August 23, 1933, after the payment of the United States Treasury Bills due on that date, the plaintiff had on deposit with the Union Trust Company of Pittsburgh in said special account known as the Manufacturers National Bank of Detroit Capital Fund Account, the sum of $5,000,000, being the proceeds of the payment of said United States Treasury Bills due on that date, and purchased out of its original capital money. Without having deposited any other funds in that account or in any manner commingling the funds so deposited in that account with any other funds, the plaintiff on August 23, 1933, purchased three and a quarter United States Treasury Bonds of 1941, dated August 15, 1933, having an aggregate par value of $4,948,000, and bearing specific identifying numbers, and paid for those bonds the sum of $4,995,933.75, out of the money on deposit in said plaintiff's fund account.

"On March 27 and March 28, 1934, plaintiff caused the same three and a quarter United States Treasury Bonds of 1941, bearing the same specific identifying numbers which the plaintiff had purchased on August 23, 1933, out of its capital fund account, to be sold, and of the proceeds of said sale caused the sum of $4,995,933.75 to be deposited with the said Union Trust Company of Pittsburgh in said account entitled on its books the Manufacturers National Bank of Detroit Capital Fund Account, without previously having been credited to the plaintiff in any other account.

"Plaintiff on March 29, 1934, caused the Union Trust Company of Pittsburgh to transfer $4,750,000 of the funds on deposit with said Union Trust Company of Pittsburgh in the account shown on its books as the Manufacturers National Bank of Detroit Capital Fund Account, to the Bankers Trust Company of New York, where such funds so transferred were deposited in a special account on the books of said Bankers Trust Company of New York, known as the Manufacturers National Bank of Detroit Capital Fund Account, which funds were so deposited without ever having been credited to any other account of the plaintiff, or in any manner commingled with any of its other funds.

"On March 30, 1934, the Bankers Trust Company of New York had on its books to the credit of the plaintiff in said account known as Manufacturers National Bank of Detroit Capital Fund Account, the sum of $4,750,000, and without ever having deposited any other funds in said account, the plaintiff purchased from said Bankers Trust Company of New York $4,750,000 par value of United States Treasury Bills due May 2, 1934, and bearing specific identifying numbers, for the sum of $4,750,000, and charged said sum to said Manufacturers National Bank of Detroit Capital Fund Account. No funds were ever deposited in the account on the books of the Union Trust Company of Pittsburgh known as

the Manufacturers National Bank of Detroit Capital Fund Account prior to the time the amount of $4,750,000 was transferred by it to the Bankers Trust Company of New York, except the proceeds of the payment at maturity of the $5,000,000 par value United States Treasury Bonds (bills) which matured on August 23, 1933, and which had been paid for out of its capital money before the plaintiff received any deposits or incurred any other liabilities, and the proceeds of the said $4,948,000 par value of three and a quarter United States Treasury Bonds, due in 1941, which were purchased out of such account.

"On March 15, 1934, plaintiff purchased 995 shares of stock in the Wayne Safe Deposit Company, a Michigan corporation, organized for the purpose of carrying on a safety deposit business, it having a par value of $100 per share, and paid for the same the sum of $99,500, which stock is still owned on the day as of which the assessment in question in this suit was made.

"The sworn statement of condition filed by plaintiff with the board of assessors contained a statement of assets of the plaintiff and of its deposits and other liabilities. Such sworn statement of condition recited that plaintiff had invested $135,000 in capital stock of the Federal Reserve Bank of Chicago, $4,750,000 in United States Treasury Bills due May 2, 1934, and $99,500 in capital stock of Wayne Safe Deposit Company, and claimed that each of such investments should be deducted in full in computing the assessable value of shares of stock in plaintiff. Such sworn statement of condition also revealed other investments in taxable assets and tax-exempt securities, which could not have been determined with reasonable certainty to represent an investment of capital, surplus, and undivided profits.

"The board of assessors of the city of Detroit, in making this assessment, disallowed as a deduction

in full said $135,000 invested in the capital stock of
the Federal Reserve Bank of Chicago, said $4,750,-
000 invested in United States Treasury Bills due
May 2, 1934, and said $99,500 invested in stock of
the said Wayne Safe Deposit Company, but in-
cluded said items along with other tax-exempt
securities, as securities that could not be determined
to represent the investment of capital, surplus, and
undivided profits of the plaintiff, and therefore al-
lowed as a deduction only .0789 of said securities, a
decimal claimed to have been determined by divid-
ing the sum of the capital, surplus and undivided
profits of the bank by the sum of capital, surplus
and undivided profits and deposits of said bank.
Aside from this change, the board of assessors ac-
cepted said return or statement as being true, and
made their assessment upon the basis of it.

"Plaintiff and certain of the stockholders thereof,
owning approximately 84 per cent. of its shares,
filed appeals to the common council of the city of
Detroit, sitting as a board of review, which appeals
included verified statements setting forth substan-
tially the facts above stated, which appeals were de-
nied and the assessment was confirmed; whereupon
the plaintiff and said stockholders filed similar ap-
peals with the Wayne County board of review and
with the State tax commission, which appeals were
also accompanied by verified statements setting
forth substantially the facts as stated above, and
which appeals were denied by each of said bodies
and the assessment confirmed.

"The board of assessors assessed the capital
stock of the plaintiff at $62.69 per share, which
assessment was confirmed by the common council of
the city of Detroit, sitting as a board of review, by
the Wayne county board of review, and by the State
tax commission.

"The plaintiff has many stockholders, some of
whom are residents of the city of Detroit, and local-
ized outside of Wayne county. The aggregate num-

ber of shares assessed in the city of Detroit for 1934 was 57,566, and the total valuation of such shares as computed by the board of assessors of the said city was $3,608,204. The tax assessed for 1934 by the city of Detroit was $88,968.37, and the State and county taxes assessed on said shares for the year 1934 was $20,012.47 ($20,012.40?).

"Plaintiff claims that if the board of assessors of the city of Detroit had allowed said $135,000 invested in said stock of the Federal Reserve Bank of Chicago, said $4,750,000 invested in United States Treasury Bills due May 2, 1934, and said $99,500 invested in stock of said Wayne Safe Deposit Company, in full, instead of only a fraction of said amounts, the proper valuation would have been $49,-316.79, and the proper city tax for 1934 would have been $1,216.05, and the proper State and county tax would have been $273.53. The plaintiff has offered to pay these amounts.

"The taxes so assessed have not been paid, although the city treasurer for the city of Detroit has made a demand for the city taxes, and the county treasurer for the County of Wayne has made a demand for the State and county taxes."

The trial court dismissed plaintiff's bill of complaint upon the theory that the controversy did not come within the meaning of the declaratory judgment act (3 Comp. Laws 1929, § 13903) as plaintiff had an adequate remedy at law.

Plaintiff appeals and contends that under a proper construction and application of 1 Comp. Laws 1929, § 3396, as amended by Act No. 94, § 8, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 3396, Stat. Ann. § 7.8), providing the manner of assessing and fixing the assessable cash value of bank shares, certain of its investments in tax-exempt securities are investments of a portion of its capital, surplus and

undivided profits and not of the proceeds or consideration of its debts and liabilities and should have been deducted in full in computing the assessable cash value of shares in plaintiff bank.

The following are the investments complained of: An investment of $135,000 in capital stock of the Federal Reserve Bank of Chicago; an investment of $4,750,000 in United States Treasury Bills due May 2, 1934; an investment of $99,500 in stock of the Wayne Safe Deposit Company, a Michigan corporation.

As we review the record we find that plaintiff bank did not receive any deposits or incur any debts or liabilities prior to August 10, 1933; that on the same day the bank was organized, namely, July 28, 1933, an investment of $135,000 in stock of the Federal Reserve Bank of Chicago was made. Such an investment was required by law (12 USCA, § 282).

In *National Bank of Detroit* v. *City of Detroit,* 277 Mich. 571, we said:

"Defendant, in its cross-appeal alleges this to be error and urges upon us the same contentions it urged in *National Bank of Detroit* v. *City of Detroit,* 272 Mich. 610, relative to the deduction of Federal reserve stock, when computing the amount of its tax. We there held that such Federal reserve stock should be deducted in its entirety, and we here find no reason to change our decision. The court properly entered judgment against the city on such claim."

It follows that the assessing officers were in error in making the above assessment.

It is next claimed that the investment of $4,750,-000 in nontaxable United States government obligations should have been deducted in full. The record

shows that at the time plaintiff bank was granted a certificate of authority to commence business all of its original capital money was deposited with the Federal Reserve Bank of Chicago; that on August 1, 1933, plaintiff purchased $5,000,000 of United States treasury bills due August 23, 1933, and paid for them out of this deposit account; and that this investment was made from funds that had always been kept clearly earmarked and were directly traceable to the original $5,250,000 which was paid in as capital money on the day the bank was organized.

Section 3396, 1 Comp. Laws 1929, as amended by Act No. 94, Pub. Acts 1931, requires all investments made out of capital moneys to be deducted from the cash value of bank shares in arriving at the assessable cash value. It follows that the assessing officers were in error in making the above assessment.

Plaintiff next contends that the investment of $99,500 in the capital stock of the Wayne Safe Deposit Company, a Michigan corporation, should be deducted in full. This investment was made March 15, 1934, pursuant to section 16 of the banking act of 1933 (48 Stat. at L. pp. 184, 185; 12 USCA, § 24) which provides:

"That in carrying on the business commonly known as the safe-deposit business the association shall not invest in the capital stock of a corporation organized under the law of any State to conduct a safe-deposit business in an amount in excess of 15 per centum of the capital stock of the association actually paid in and unimpaired and 15 per centum of its unimpaired surplus."

Under the above authority the investment was made from the capital and surplus of plaintiff bank. Such an investment represents a part of the business of the bank. We can come to no other conclu-

sion but that such investment is an investment of capital, surplus and undivided profits, and not the consideration of debts and liabilities within the meaning of 1 Comp. Laws 1929, § 3396, as amended by Act No. 94, Pub. Acts 1931. The assessing officers were in error in their failure to make such a determination. The investment is exempt from taxation under the above-mentioned authority.

It is contended by defendants that the bill of complaint should be dismissed as 1 Comp. Laws 1929, § 3507 (Stat. Ann. § 7.168), provides that, "No injunction shall issue to stay proceedings for the assessment or collection of taxes under this act;" that the general tax laws of the State of Michigan provide plaintiff bank an adequate remedy at law for the recovery of any illegal taxes assessed against the stockholders of said bank; and the bill filed to obtain a declaration of rights is insufficient as it does not allege facts that bring it within the rules prescribed for such actions.

From an examination of the record and the law appertaining thereto we find that the tax in dispute is not a tax against plaintiff bank, but is a tax on its shares of stock and against its stockholders. 1 Comp. Laws 1929, § 3402 (Stat. Ann. § 7.14), provides that the assessment shall be to the owners of the stock. The duty of the bank is prescribed by 1 Comp. Laws 1929, § 3437 (Stat. Ann. § 7.90), as follows:

"In case of taxes assessed upon the shares of the capital stock of any bank, he (the treasurer) shall call upon the cashier of such bank and demand payment thereof, and thereupon it shall be the duty of such cashier to pay the same, and charge the amount so paid against the shares of stock so taxed."

In *City of Muskegon* v. *Lange,* 104 Mich. 19, we had occasion to construe the above statute and there said:

"Who can doubt that the intent of the legislature was that the payment required was to be made by the cashier from the funds of the bank, and that it was to be charged against the shares of stock taxed, upon the books of the bank?"

The above section makes the bank an instrumentality of the State to collect taxes from its shareholders and is therefore a proper party to bring this suit.

In *National Bank of Detroit* v. *City of Detroit,* 272 Mich. 610, 617, we said:

"The claim has been made that plaintiff is not the proper party in interest and that suit should have been brought by the owner of the common stock. While the law does provide that all shares in banks should be assessed to owners, 1 Comp. Laws 1929, § 3402, subd. 3, it further imposes the duty on the cashier of the bank to pay the taxes on the shares and charge the amount so paid to the owner. 1 Comp. Laws 1929, § 3437. The bank becomes liable for the payment of the taxes, with the right to obtain repayment from its stockholders. *Eyke* v. *Lange,* 104 Mich. 26. If it wrongfully paid taxes illegally exacted under protest, the action for recovery would not be against its stockholders but against the political subdivision to which the tax had been paid."

While the bank becomes liable for the payment of taxes, yet 1 Comp. Laws 1929, § 3437, contemplates that the cashier will use funds to pay taxes lawfully imposed on the bank's shareholders. If the bank should pay, without protest, an unlawful tax assessed on its shareholders it cannot recover such

taxes from the shareholders. *National Bank of Detroit* v. *City of Detroit, supra.*

If the tax is disputed the position of the bank is well illustrated in the case of *Cummings* v. *National Bank,* 101 U. S. 153, 156, where the court said:

"It is next suggested that since there is a plain, adequate, and complete remedy by paying the money under protest and suing at law to recover it back, there can be no equitable jurisdiction of the case.

"The reply to that is that the bank is not in a condition where the remedy is adequate. In paying the money it is acting in a fiduciary capacity as the agent of the stockholders,— an agency created by the statute of the State. If it pays an unlawful tax assessed against its stockholders, they must resist the right of the bank to collect it from them. The bank as a corporation is not liable for the tax, and occupies the position of stakeholder, on whom the cost and trouble of the litigation should not fall. If it pays, it must be subjected to a separate suit by each shareholder. If it refuses, it must either withhold dividends, and subject itself to litigation by doing so, or refuse to obey the laws, and subject itself to suit by the State. It holds a trust relation which authorizes a court of equity to see that it is protected in the exercise of the duties appertaining to it. To prevent multiplicity of suits, equity may interfere."

See, also, *Whitney National Bank* v. *Parker,* 41 Fed. 402; *Public National Bank of New York* v. *Keating* (C. C. A.), 47 Fed. (2d) 561 (81 A. L. R. 497); *Knopf* v. *First National Bank of Chicago,* 173 Ill. 331 (50 N. E. 660).

The statute, 1 Comp. Laws 1929, § 3507, which provides that, "No injunction shall issue to stay proceedings for the assessment or collection of

taxes under this act'' applies only where there remains an adequate remedy at law.

In *City of Detroit* v. *Wayne Circuit Judge*, 127 Mich. 604, the issuance of a temporary injunction restraining the collection of a personal tax against a street railway company was sustained. The court said:

"It is contended by the relators that this injunction should be dissolved, upon the ground that it is an inappropriate remedy, and that in no case will an injunction lie to restrain the collection of a personal-property tax. That this is the general rule has been many times declared by this court. But that there may be exceptions where the property is of peculiar value to the owner, or where, as in a case like the present, a valuable franchise would be interfered with, has been affirmed. See *Henry* v. *Gregory*, 29 Mich. 68; *Osborn* v. *Bank of the United States*, 9 Wheat. (22 U. S.) 738; Cooley, Taxation (1st Ed.), 538, 539. We think this case should be treated as an exception to the general rule."

In the case at bar a temporary injunction was not asked for and in view of the fact that the tax is invalid we see no reason why a permanent injunction should not issue to restrain tax collectors from collecting an invalid tax. It also appears that there is no substantial dispute as to the facts involved and it would serve no useful purpose to remand this case for a finding of facts by the trial court.

The decree of the trial court should be reversed and a decree should be entered therein in accordance with this opinion. Plaintiff should recover costs.

Potter, J., concurred with Sharpe, J.