## Guy F. Hinchman and Another v. The City of Detroit.

Where the Common Council of Detroit proceeds ;to vacate public grounds, it is not necessary that they should specify in the resolution any subsequent use to which they may contemplate putting the grounds.

Nor is it necessary that the jury impannelled to assess the damages and benefits to individuals by reason of the improvement in· vacating such grounds, should pass upon the necessity of the contemplated improvement.

*Submitted on briefs October 2d. Decided November 16th.*

Appeal from Wayne Circuit in Chancery.

November 22, 1859, the Common Council of Detroit passed the following resolution:

"Be it resolved by the Common Council of the city of Detroit, That it is necessary to make the following described improvement in said city, to wit:

To vacate all that portion of the Campus Martius, so called, in said city, in the county of Wayne, and State of Michigan, lying west of Woodward avenue, and between Michigan avenue and Fort street, in said city. And the said Common Council do hereby declare that they will, on the first Monday in January,. A. D. 1860, at the hour of 9 o'clock upon that day, apply to the Recorder's Court of said city, for the drawing of a jury to ascertain the just damages and compensation which any person may be entitled to if said improvement be made, and to apportion

and assess such damages and compensation to, and upon, lots, premises, and subdivisions thereof which will be benefitted by such improvement.

And the City Clerk of said city is hereby directed to give notice of said improvement, by causing a copy of this resolution to be published daily for four successive weeks before the said first Monday of January, 1860, together with his certificate of the passage thereof, in the Detroit *Daily Free Press*, the official newspaper of said city, and in the Detroit *Tribune*, another daily newspaper published in said city."

Under this resolution a jury was impanneled, which, on January 23, 1860, returned into the Recorder's Court their inquest and verdict as follows:

"In the Recorder's Court of the city of Detroit: State of Michigan, county of Wayne, city of Detroit, ss.

In the matter of the vacation of a portion of the Campus Martius in said city, under a resolution of the Common Council of the city of Detroit, passed and adopted at their session of the twenty-second day of November, A. D. 1859:

We, the undersigned jurors, elected and sworn on Monday, the sixteenth day of January, A. D. 1860, in said Recorder's Court, for the purpose of making the following described improvement, that is to say: To vacate all that portion of the Campus Martius, so called, in said city, in the county of Wayne and State of Michigan, lying west of Woodward avenue and between Michigan avenue and Fort street, in said city — do hereby respectfully report to said court, that on being so duly sworn in said matter, at a session of said court, held at the City Hall on that day, and having received from the said court instructions as to their duties and the law applicable to the case, and having received from said court a copy of said resolution, certified to by the Clerk thereof, and under the seal of said court, a copy of which resolution, certified and sealed as aforesaid, is hereto annexed, marked "A," they, the said jury, went personally

HINCHMAN v. CITY OF DETROIT.

upon the property mentioned and described in said resolution, and as near as practicable to other lots and lands in said city which can be damaged or benefited by the improvement mentioned in said resolution; and they hereby further report that, upon their view and examination of said portion of said Campus Martius mentioned and described in said resolution, they find that no person owning or interested in any other lots or lands lying in said city will be damaged by the making of the improvement aforesaid, and that no person is entitled to any damage or compensation on occasion of the making of said improvement.

In testimony whereof we, the said jurors, have hereunto set our hands this, the twenty-third day of January, in the year of our Lord one thousand eight hundred and sixty." [Signed by the jurors.]

March 5, 1860, this verdict was confirmed by the Recorder's Court, and on the next day the following resolution was passed by the Common Council:

"*Be it resolved by the Common Council of the City of Detroit*, That all that portion of the public grounds in said city of Detroit, county of Wayne, and State of Michigan, known and described as the Campus Martius, lying west of Woodward avenue, and between Michigan avenue and Fort street, in said city, heretofore used as a park or public ground, be, and the same is hereby, vacated as public grounds, for the following purpose, and no other, to wit: For the purpose of using and occupying the same as a site for the erection and use of a building, and the necessary appurtenances, to be known as the City Hall, and to be used for the purposes of a hall for the sessions of the Common Council, city courts, and such other courts as the city authorities may see fit to allow, city offices, and such other public offices as the said authorities may see fit to allow to be kept therein, and for any other public objects or purposes connected with the interests of said city, the county of Wayne, or of the State of Michigan, which said

MICH. 9 — H

authorities may, from time to time, see fit to countenance and permit."

An ordinance of the same purport with this resolution, was passed by the Common Council, March 13, 1860, and approved the next day, to take effect immediately.

March 13, 1860, the Mayor and Common Council of said city, constituting, as successors of the Governor and Judges, the Land Board, under the act of Congress of May 29, 1842, held a meeting at which the following proceedings were had:

"At a session of the Land Board, held at the City Hall, March 13th, A. D. 1860, pursuant to a call by the Mayor, were

Present—Christian H. Buhl, Mayor; Ald. Backus, Bagley, Barlage, Farrand, Flannigan, Foote, Gibbings, Hale, LeFavour, Marx, Morse, Olewine, Phelps, Phillips, Sutton, Swinscoe, Truckey, Wing, and the President, N. P. Jacobs—20.

The following preamble and resolution was presented by Ald. Hale:

*Whereas*, The Common Council of the city of Detroit has lately vacated that portion of the Campus Martius, in said city, lying west of Woodward avenue, and between Michigan avenue and Fort street, for the sole purpose of erecting thereon a City Hall, deeming it a necessary public improvement; and

*Whereas*, Said portion has always remained in a neglected condition, and has never been useful to the public for purposes of recreation as a park, and would, in the opinion of this Board, be of far more public utility as a site for a City Hall than if it should remain in its present state; and

*Whereas*, It has been ascertained by a jury that no damages arise to any person, by reason of the vacating of said portion of the Campus Martius; therefore

*Be it Resolved*, That this Board do issue a trust deed of said portion of said Campus Martius, to the city of Detroit, upon the trust that said city shall erect thereon and forever

maintain a City Hall for municipal purposes, and for the holding of City, County and State Courts, and the public offices connected therewith, and shall use the premises for no other purpose whatsoever.

Adopted as follows:

*Yeas*—The Mayor, Ald. Backus, Bagley, Barlage, Foote, Gibbings, Hale, LeFavour, Olewine, Phelps, Phillips, Sutton, Swinscoe, President—14.

*Nays*—Ald. Farrand, Flannigan, Marx, Morse—4.

Whereupon, on motion of Ald. Gibbings, a deed in accordance with the terms of the resolution was signed by the members of the Board, and duly acknowledged."

Complainants, as executors of the last will and testament of Jacob Abbott, deceased, holding and occupying certain lots fronting on Michigan avenue, and bounded on one side on Campus Martius, filed their bill of complaint against the city, claiming that Campus Martius was established and dedicated as a public square by the original plat of the town, of 1807, and has ever since continued to be such public square:

That said inquest was wholly irregular, insufficient and void for the purpose of vacating said public square, inasmuch as the same in no way found, determined, or ascertained the necessity of vacating said square, or any part thereof, or in what that necessity consisted, or for what purpose the same was necessary, and inasmuch as said inquest wholly failed to find or award any damages to any person or persons by reason of the vacating said square:

That the said city of Detroit, under color of said proceedings and not otherwise, now claim the right and has assumed so to act, to shut up said square, and appropriate and use the same for the purpose of erecting thereon a large building to be used as a City Hall, covering of said space, so pretended to be vacated, an area of eighteen thousand square feet; to be large, massive, and three stories high, which will greatly damage complainants in the mat-

ter of their said lots, and the use and enjoyment of the same, by filling up and encumbering the said square, and greatly diminish not only the value, but also the comfort and enjoyment of the large and valuable dwelling house they have on said lots, now occupied by them as a dwelling:

That one principal value of their said lots, and their dwelling house thereon, is the situation of the same upon said square, and the fact that said square is kept and maintained open and unobstructed, as they have a just right to have it; and that the pretended vacation of said square, and the erection thereon of a building of the size contemplated, or of any size, will work a great and irreparable damage to complainants, and constitute an intolerable nuisance to their premises.

And the bill prays that "the said pretended proceedings to vacate said square, called the Campus Martius, may be declared and decreed to be null and void, and of no effect, and your orators' just rights to said square may be declared and decreed and established, and in the meantime that the said defendant, the city of Detroit, and all their agents and officers, and all other persons for them or in their behalf, may be strictly enjoined and restrained from in any way or manner interfering with said square, to vacate the same, or to dig up the soil thereof, or to erect or commence to erect thereon or therein any building or other structure for the purpose of a City Hall, or other purposes, and that said injunction may continue until the hearing, and then may be made perpetual."

The answer of the city, (under oath) justifies under the said proceedings of the Common Council and in the Recorder's Court; denies that the value of complainants' premises will be injured by the contemplated improvement, and on the contrary insists that their value will be greatly enhanced by the erection of a City Hall as contemplated, which, instead of constituting a nuisance to complainants

or their premises, will be an ornament to that part of the city, and of great benefit to complainants.

A replication was filed to the answer, but no evidence was taken in the case except of the proceedings herein-before recited, and of the action of the Common Council relative to the plan of the City Hall.

The Circuit Court dismissed the bill, and complainants appealed.

The principal question in the case, affecting the merits, was whether the jury, under the charter, must determine the necessity of the improvement contemplated by vacating the part of the public square in question.

*D. E. Harbaugh* and *H. T. Backus*, for complainants.

*W. J. Speed, City Attorney,* and *A. Russell,* for the City.

MARTIN CH. J.:

So far as the complainants ask for an injunction upon the ground that the vacation of a portion of Campus Martius, and the erection of a City Hall thereon, creates a nuisance, the answer having denied all the equity of the bill, and set out a state of facts wholly inconsistent with such relief, and no proofs having been exhibited, the bill was properly dismissed. But the case does not appear to have been brought into this court upon that ground solely, but also for supposed defects and irregularities in the proceedings in the Recorder's Court; and to these the evidence is exclusively directed.

The power of vacating public grounds is lodged with the Common Council, acting through judicial proceedings in the Recorder's Court; and these proceedings all appear to have been regularly taken. But it is claimed that the resolution of the Common Council upon which the subsequent proceedings in the Recorder's Court were founded, was not in compliance with the charter, and hence con-

ferred no jurisdiction upon that court. The charter, *Chap. VII,* § 1, provides that the Common Council shall have power to lay out, alter, vacate, &c., streets, public grounds, &c., in said city, whenever they shall deem it a necessary public improvement, &c.; and § 2 provides that, whenever they shall deem any *such* improvement necessary, they shall so declare by resolution, and describe the contemplated improvement, &c. It is charged and admitted that it is the purpose of the city, as soon as the premises in question are vacated, to erect upon it and an adjoining lot now owned by the city, a City Hall; and it is claimed that this is the improvement that should have been described in the resolution. We think not. The vacating of the square is, by the first section, denominated an improvement; and this construction of the word determines its signification in the second section. "Such improvement" in the second, refers to "it" in the first section. The Common Council are to determine whether an act respecting the public property is necessary — as to open streets or alleys, or vacate them, or any' public grounds — and this act is denominated an improvement; and the fact that a further design exists respecting the property, makes it none the less an improvement, nor does it require that the further design, which may or may not be an improvement in the common signification of the term, should also be described. Now it is contended that the jury impannelled in the Recorder's Court are to determine the necessity of the improvement; and it will be conceded to be the grossest absurdity so to construe the law, that such jury may prevent the erection of a City Hall by holding, against the action of the whole city, that a hall is unnecessary. This shows to what absurd consequences the complainants' doctrine, that such is really a part of the jury's duty, leads. There is no provision in the charter imposing this duty upon the jury, except in cases where private property is taken: in all other cases it is expressly confided to the

Common Council. The language of § 14 of Chap. VII is not applicable to cases of this character, nor did the Legislature ever intend it to be so, or to confer upon a jury the power, in a case like that before us, of revision of the acts and decisions of the Common Council. When private property is taken for public use, the Constitution requires that a jury should determine the necessity for its condemnation; and a careful consideration of § 14 will show, that it can only have reference to that contingency. But even if the amount of benefit which an adjoining owner may be supposed to have in the public square, beyond that to which every individual of the public is entitled, can be considered private property, still, in this case, no such peculiar benefit having been shown, and all injury by the vacation of this portion of the square being denied, and no proofs taken to show any injury, and the jury having negatived any damages, this case must be treated as one in which the taking of private property is not involved.

The decree of the court below is affirmed.

CHRISTIANCY J. concurred.

MANNING J. dissented.

CAMPBELL J. did not sit in the case.