## The Board of Education v. The City of Detroit.

*Public park: Act of congress construed: Exception from grant: Name of building as a designation of the land: City of Detroit: Proprietary rights.* The triangular piece of ground bounded by State street, Rowland street and Griswold street, in the city of Detroit, on which, in 1823, was erected a building known as the court house, is held to have been excepted from the grant of property made to the city by the act of congress of August 29, 1842, by the exception therein made of the court house, the name of the building being given as a designation for the land itself; and the city, therefore, though having a power of legislative control and regulation, has no authority over this park as a proprietor.

*Public park: Rights of the city: Board of education: Landlord and tenant.* The relations of the city to the board of education, in reference to the occupation of this triangle by the latter under the existing legislation in that behalf, is held not to be that of landlord and tenant, such as to empower the city by a notice to quit to terminate such occupancy.

*Public parks: Dedication: Streets: Inconsistent public uses.* This ground having been reserved by the act of congress of 1807, "for public wells and pumps, for markets, for public schools, for houses for the reception of engines or other articles for the extinguishment of fires and for the preservation of the property of the inhabitants, for houses for the meeting of religious, moral, literary

30 MICH.—64.

or political societies or other useful associations, and generally for such purposes of utility or ornament as the city council of Detroit may at any time by law provide," etc., proceedings by the common council to open a street through it cannot be sustained as action merely changing the uses of public grounds and devoting that which before was dedicated to public instruction to another public purpose, for this is a change from one of the uses specified in the act, to a public use which is not there enumerated.

*Cases distinguished.* This case is distinguishable from *Riggs v. The Board of Education,* 27 *Mich.,* 262, and *Hinchman v. Detroit,* 9 *Mich.,* 103.

*Construction of statutes : General words : Enumerated particulars : Parks.* The general words in said act of congress, "and generally for such purposes of utility or ornament as the city council of Detroit may at any time by law provide," must be construed as referring to purposes of the same general nature and classification with those specifically enumerated, and cannot be made to embrace those which are so·different as to amount to an annihilation of the very parks which congress by said act sought to establish and perpetuate.

*Charter of Detroit : Common council : Parks : Streets.* Upon the question of the legislative intent by the charter of Detroit to confer upon the common council authority to convert the city parks into streets, the fact that the very section which confers a general authority to lay out and open streets defines its powers in respect to such grounds to be "to make, grade and improve and adorn the public parks, squares, spaces and all grounds in said city belonging to or under the control of the corporation, and to control and regulate the same, *consistently with the purposes and objects thereof,"* has a significant bearing, and clearly negatives any inference of such intent from the general authority granted by this section.

*Parks : Streets.* It is not "consistent with the purposes and objects" of such parks that they should be converted into streets, which would terminate their distinct and separate existence.

*Statute construed : Parks : Public uses : Improvements : Tenancy : Rights of · occupants.* The act of 1807, for several of the purposes enumerated, clearly contemplates a dedication to public uses which are to be worked out through corporations or associations of citizens formed for religious, moral, literary or political purposes, and by means of buildings and improvements to be erected or made by an expenditure of their own funds ; and it clearly does not contemplate that these corporations are to be all the while mere tenants at will of the city, subject to be dispossessed and to be deprived of the benefit of their expenditures on no more notice than is required by the statute to be given in the case of a tenant at sufferance.

*Board of education : City of Detroit : Distinct corporations.* The board of education of Detroit, though existing for purposes strictly public, is nevertheless a distinct corporation from the city, having its distinct property and funds, and entitled to demand for them the same protection which may be demanded by other corporations or individuals.

*Heard October 27.    Decided January 6.* '

Appeal in Chancery from Superior Court of Detroit.

*Theodore Romeyn,* for complainant.

*D. C. Holbrook, City Counselor,* and *C. A. Kent,* for the defendant.

COOLEY, J.

The purpose of the bill in this case is to restrain the city of Detroit from extending Griswold street through a triangular piece of ground now occupied by the board of education, and upon which is situated the capitol union school. This ground is now bounded by State street, Rowland street and Griswold street; and is one of those internal spaces of ground which, by the act of congress of 1807, entitled " An additional act concerning the town of Detroit," was to be reserved " for public wells and pumps, for markets, for public schools, for houses for the reception of engines, or other articles for the extinguishment of fires and for the preservation of the property of the inhabitants, for houses for the meeting of religious, moral, literary or political societies or other useful associations, and generally for such purposes of utility or ornament as the city council of Detroit may at any time by law provide," etc. A building was erected upon it in 1823, which was sometimes spoken of as the court house, but which was used as a capitol for the territory, and afterwards for the state. The act of congress of August 29, 1842, which vested in the mayor, recorder and aldermen of the city of Detroit all the powers and rights with regard to the plan of Detroit, and land titles therein, which theretofore had been vested in the governor and judges, and which transferred to the corporation such remaining lands on the plan as were subject to their control, excepted from the grant the court house and jail, thereby intending, without doubt, to except the ground on which these buildings were erected, the name of the building being given as a designation for the land itself.

On the fifth day of October, 1847, the common council, on petition of the board of education asking that the premises in question might be put into possession of the board for their purposes, passed the following resolution: " *Resolved,* that as soon as the capitol be vacated by the state authorities, the same shall be set apart and dedicated to

the purposes of education, and that the same, under the sole direction of the board of education, shall be used for the several schools of the city, in such manner as the board may direct; the city not to be liable to said board on account of such grant." Under this resolution the board of education went into possession, and have occupied the lands and building for the purposes of public instruction to this day. They have also expended large sums in building, and were taking steps to expend more when the proceedings took place of which they now complain.

These proceedings, as already stated, consist in the opening of Griswold street through the grounds; and it is conceded that this, if allowed to take place, will render impracticable any further occupation of the grounds by the board of education for existing uses. Indeed, since this suit was begun, the common council has served upon the board a notice intended to terminate any right or privilege of possession the latter may now have; and the assumption in doing so must be that the title to these grounds is in the city, and that the board of education is in possession as tenant at will only, and subject to be dispossessed on giving the statutory notice. But it is clear that the city is not proprietor or landlord, and the board not a tenant, in the ordinary meaning of those terms. The city could not sell this park as proprietor, for it was excepted from the grant of property which was made to the city, and put at its disposal by the act of congress of 1842. A power of control, the common council undoubtedly has, but it is a power of legislation and regulation, and not that which pertains to the dominion of an owner.

It is claimed, however, that the action of the council may be sustained as action merely changing the uses of public grounds, and devoting that which before was dedicated to public instruction to another public purpose, that is to say, to the use of the public as a street; and this is supposed to be justified by *Riggs v. The Board of Education, 27 Mich., 262*, in which it was held competent to

appropriate one of the little parks on the governor's and judges' plan of the city to the purposes of a public library. But .in that case the change was from one of the uses mentioned in the act of 1807 to another of those uses, and we had then,—and have now,—no doubt of its being entirely competent under the continuous power of legislation existing in the council under that act.

In the present case, a park already devoted to one of the uses specified in the act of 1807, is proposed to be put to a public use which is not there enumerated. It is true that that act, after naming many public uses to which these parks might be dedicated by the action of the council, added the words, "and generally for such purposes of utility or ornament as the city council of Detroit may at any time by law provide;" but these general words, in accordance with a familiar canon of construction, must be understood as referring to purposes of the same general nature and classification with those enumerated; and cannot, without violence to the language, be made to embrace those which are so different as to amount to an annihilation of the parks themselves.— *United States v. Irwin, 5 McLean, 178 ; Lyndon v. Standbridge, 2 H. & Nor., 47 ; McDade v. People, 29 Mich., 50.*

It is very clear, we think, that the council do not derive from the act of congress any authority to do what they propose, and our attention has not been directed to any provision in the city charter by which it can be claimed that the state has conferred it. On the other hand, it is highly significant as indicating the legislative intent, that the very section of the charter which confers upon the common council a general authority to lay out and open streets, defines its powers in respect to such grounds to be, "to make, grade, improve and adorn the public parks, squares, spaces, and all grounds in said city belonging to or under the control of the corporation, and to control and regulate the same *consistently with the purposes and objects thereof.*"— *Laws of 1857, p. 96 ; Laws of 1871, Vol.*

*2, p. 1373.* It cannot be claimed that this is consistent with their being devoted to other purposes and objects, particularly to one which, like that of a street, would terminate their distinct and separate existence.

No question arises in this case like that presented in *Hinchman v. Detroit, 9 Mich., 103*, of the right of the city to vacate any of these public grounds in order to put them to other uses; for the action of the council does not purport to be action to vacate the park, and if it did the question could not be the same as in that case, for there a part of a public ground which was devoted to one of the purposes specified in the act of 1807 was proposed to be vacated in order to appropriate it to another of those purposes; and this, as has been seen, is not the case here. But it may not be inappropriate to call attention to some other circumstances in which that case differs from this. There the ground proposed to be vacated was under the exclusive control of the city. But several of the purposes enumerated in the act of 1807 evidently contemplate a dedication of grounds to public uses which are to be worked out through corporations or associations of citizens, formed for religious, moral, literary or political purposes, and by means of buildings and improvements erected or made by an expenditure of their own funds. It is impossible to suppose that act contemplated that these corporations were to be all the while mere tenants at will of the city, subject to be dispossessed and to be deprived of the benefit of their expenditures on no more notice than is required by the statute to be given in the case of a tenant at sufferance. Their rights of property are entitled to protection as in any other case, and it is not at all probable that provision would be made by the legislature for opening streets through such grounds without at the same time providing with some care that the dispossession of the occupants should be as little vexatious and injurious as possible. And the board of education, though existing for purposes strictly public, is nevertheless a distinct corporation from the city, having its dis-

tinct property and funds, and entitled to demand for them the same protection which may be demanded by other corporations or individuals.

In our opinion the decree of the superior court was correct, and it must be affirmed, with costs.

The other Justices concurred.