HERTZOG *v.* CITY OF DETROIT.

SEPARATE OPINION.

DETHMERS and O'HARA, JJ.

1. TAXATION—MUNICIPAL TRANSPORTATION UTILITY—SCHOOL TAXES
—CONSTRUCTION OF STATUTES.

State taxes, as used in provision of home-rule city act permitting a city to acquire a transportation utility and that when "so acquired, State and county taxes shall be paid thereon as if privately owned," is construed as not including school taxes, in view of the provisions of the general property tax act prescribing the manner of assessing taxes at time such term was included in the home-rule act, particularly directing that the assessor should enter "all school taxes and the 1 mill tax in one column * * * and the State taxes in another column" (PA 1909, No 279, as amended by P.A 1929, No 126, adding § 4f, subd [1], CL 1929, § 3428).

2. STATUTES—CONSTRUCTION.

A term found in a statute is deemed to have been used in the sense in which the term was understood at the time it was adopted.

---

REFERENCES FOR POINTS IN HEADNOTES

[1,3, 4, 9, 17]  51 Am Jur, Taxation §§ 562, 563.
[2]  50 Am Jur, Statutes §§ 236, 237.
[5, 6, 19, 22]  22 Am Jur 2d, Declaratory Judgments §§ 37–39.
  Tax questions as proper subject of action for declaratory judgment.
  11 ALR2d 359.
[7, 18]  22 Am Jur 2d, Declaratory Judgments § 78.
[8, 12, 13, 23, 24]  51 Am Jur, Taxation § 943.
[10]  5 Am Jur 2d, Appeal and Error § 1009.
[11]  51 Am Jur, Taxation § 1184 *et seq.*
[14]  37 Am Jur, Municipal Corporations § 6.
[15]  47 Am Jur, Schools § 81.
[16] .47 Am Jur, Schools § 82.

(1)

3. SAME — SCHOOL TAXES — MUNICIPALLY-OWNED TRANSPORTATION UTILITY.

Provision of school code that assessing officers of a city are directed to "apportion the school taxes, together with *other* taxes of the city" is indicative of the fact that the legislature did not contemplate that taxes for support of local schools were *State taxes* as the latter term is used in home-rule city act requiring imposition of State and county taxes on municipally-owned transportation utility after acquisition by city (CLS 1961, §§ 117.4f, subd [1]; 340.196).

4. MUNICIPAL CORPORATIONS—CHARTER—FARES ON TRANSPORTATION UTILITY—TAXATION.

Home-rule city charter provision that rate of fare on city-owned transportation system should be sufficient to pay taxes on the physical property the same as though privately owned is construed as relating to the fixing of fares, not the imposition of a tax, especially where to construe it as an imposition of a tax would appear to clash with State statutes relative to imposition of local taxes (CLS 1961, § 117.4f; Detroit Charter, title 4, chap 13, § 14).

5. DECLARATORY JUDGMENT—PARTIES—SCHOOL TAXES—MUNICIPAL TRANSPORTATION UTILITY.

*A taxpayer and fare-paying patron of municipally-owned transportation utility is a proper party to bring action for declaration of rights as to liability of the facility for school taxes (GCR 1963, 521).*

6. SAME — REMEDY — SCHOOL TAXES — MUNICIPAL TRANSPORTATION UTILITY.

*Declaratory judgment action was an appropriately sought remedy for purpose of obtaining determination by a taxpayer and a fare-paying patron of municipally-owned transportation utility of the latter's liability for payment of school taxes on its property (GCR 1963, 521).*

7. SAME—LIMITATION OF ACTIONS.

*The period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief in the absence of a limitation in the court rule providing for declaratory relief (GCR 1963, 521).*

8. TAXATION—PAYMENT UNDER PROTEST—LIMITATION OF ACTIONS— DECLARATORY JUDGMENT.

*The statutorily-created right to sue within 30 days for and to recover the amount of taxes paid under protest is a right lim-*

*ited to the taxpayer who paid the taxes, hence, such 30-day limitation is inapplicable to plaintiff in action for declaratory judgment as to liability of municipally-owned transportation utility where, although plaintiff is a taxpayer and fare-paying passenger of the utility, he did not pay the particular tax sought to be recovered (CLS 1961, § 117.4f; CL 1948, § 211.53 as amended by PA 1962, No 133; CLS 1961, § 340.196; Detroit Charter, title 6, chap 4, § 33; GCR 1963, 521).*

9. SAME—EXEMPTIONS—PUBLICLY-OWNED UTILITY.
   *Whether private ownership of utilities should be protected against unfair competition of a publicly-owned utility benefited by exemption from tax liability is a policy matter for legislative consideration.*

10. COSTS—PUBLIC QUESTION—MUNICIPAL TRANSPORTATION UTILITY —SCHOOL TAXES.
    No costs are allowed on appeal in action for declaratory judgment relative to right to subject home-rule city transportation utility to school taxes for the city school district, a public question being involved (CLS 1961, § 117.4f, subd [1]; GCR 1963, 521).

OPINION OF THE COURT.

See headnotes 1, 3, 4.

11. TAXATION—REFUND—VOLUNTARY PAYMENT.
    Generally, a taxpayer suing for refund of tax must establish involuntary payment of the tax, as voluntary payment bars recovery.

12. SAME—PAYMENT UNDER PROTEST—ACTION.
    The general property tax act created a right to recover taxes paid thereunder provided the payment was accompanied by written protest and action to recover payment made was instituted within 30 days (CL 1948, § 211.53, as amended by PA 1962, No 133).

13. SAME—PAYMENT—ACTION.
    An action to recover property taxes paid to a home-rule city is governed by the statute setting forth the procedure for doing so rather than by a provision of the city charter not in accord with the statute, hence, where action to recover payment not made under protest, was not brought within 30 days after payment had been made, recovery was barred (CL 1948, § 211.53, as amended by PA 1962, No 133; Detroit Charter, title 6, chap 4, § 30).

14. SCHOOLS AND SCHOOL DISTRICTS—MUNICIPAL CORPORATIONS—SEPARATE LEGAL ENTITY.

The board of education of a first-class school district, though existing for purposes strictly public, is not a division of the city in which it is located, but is a separate legal entity having distinct property and funds and the right to determine the annual tax needs of the school district, the city performing the ministerial task of collection (CLS 1961, §§ 340.192, 340-.196).

15. SAME—LIMITATIONS ON TAXATION.

The board of education of a first-class school district is limited in the amount of taxes that may be collected for it by the Constitution and city charter, except as property-owning voters approve an increase of millage (Const 1963, art 9, § 6; CLS 1961, § 211.201 et seq.; § 340.196).

16. SAME—CITY TREASURER—REMITTANCE OF TAX COLLECTIONS.

The city treasurer is a collection agent for the school board of the school district in a first-class school district, and, as such, is obliged to remit to the board of education only its portion of the total tax collections (CLS 1961, § 340.196).

17. TAXATION—MUNICIPALLY-OWNED TRANSPORTATION FACILITY—REFUND OF SCHOOL TAXES.

Municipally-owned transportation facility which has hitherto stood as a taxpayer to city and the board of education of first-class school district located within the city, and which failed to comply with statutory provisions relative to obtaining refund of taxes paid by it, may not recover such payment credited to school board of such district (CLS 1961, §§ 117.4f, 340.196; CL 1948, § 211.53, as amended by PA 1962, No 133).

18. DECLARATORY JUDGMENT—STATUTE OF LIMITATIONS.

A special statute of limitations applicable to a special statutory proceeding will be applied in a declaratory judgment action, when the result transforms the rights and other legal relations of those primarily interested in the litigation and gives the declaratory judgment a retroactivity wholly beyond its scope or purpose (CL 1948, § 211.53, as amended by PA 1962, No 133; GCR 1963, 521).

19. SAME—DERIVATIVE RIGHTS—REFUND OF SCHOOL TAXES.

The right of a taxpayer and fare-paying patron of municipally-owned transportation facility to obtain a refund of school taxes paid by the facility is derivative and he stands in no

better position than the facility and is entitled to no greater declaration of rights than it could obtain (CL 1948, § 211.53, as amended by PA 1962, No 133).

See headnote 10.

### Separate Opinion.

### Souris, J.

See headnote 5.

20. Declaratory Judgment—School Taxes—Prospective Liability—Municipally-Owned Utility.

Plaintiff taxpayer's right to seek a declaratory judgment defining the municipally-owned transportation utility's prospective liability for city and school taxes under the home-rule city act was not foreclosed by any action or inaction of the municipal transportation utility (CLS 1961, § 117.4f).

See headnotes 1 and 19.

21. Taxation — Declaratory Judgment — Municipally-Owned Transportation Facility — Payment Under Protest — Refund.

Plaintiff taxpayer was entitled in declaratory judgment suit to have adjudicated the rights and liabilities of a municipally-owned transportation facility with respect to the taxes sought to be imposed upon it, but under the taxation statutes the facility had a right to recover taxes paid the previous year only if the taxes were paid under protest and suit for their recovery was begun within 30 days of payment, and commencement of declaratory judgment suit could not restore to the facility rights which it already had waived (CL 1948, § 211.53).

22. Declaratory Judgment — Taxation — Municipally-Owned Transportation Facility—Refund.

An action brought by a municipally-owned transportation facility, or by anyone else, to declare the rights of the facility as to a refund of taxes paid the previous year could result only in a declaration that the transportation facility had waived any right it had to recover those taxes, where it had failed to comply with the statutory provision that it commence action to recover payment under protest within 30 days (CL 1948, § 211.53, as amended by PA 1962, No 133).

23. Taxation—Payment Under a Mistake of Fact—Protest.

A taxpayer may recover taxes paid under a mistake of fact even though the taxes were not paid under protest and suit started within 30 days (CL 1948, § 211.53, as amended by PA 1962, No 133).

24. Same—Void Taxes—Voluntary Payment—Protest.
    *A voluntary payment of a void and illegal tax bars subsequent recovery unless it is paid under protest and suit for recovery is started within 30 days (CL 1948, § 211.53, as amended by PA 1962, No 133).*

Appeal from Wayne; Weideman (Carl M.), J. Submitted December 8, 1965. (Calendar No. 19, Docket No. 51,206.) Decided June 8, 1966.

Complaint for declaratory judgment by Murdoch J. Hertzog against City of Detroit, a Michigan municipal corporation; Edward Carey, Mary V. Beck, James H. Brickley, Edward Connor, Mel Ravitz, Philip J. Van Antwerp, William G. Rogell, and Anthony J. Wierzbicki, members of common council of City of Detroit; Charles N. Williams, treasurer of City of Detroit; Board of Education of the School District of the City of Detroit; and Paul C. Ackerman, Clarence R. Krajenke, and Bernard F. Landuyt, members of the board of street railway commissioners of City of Detroit, to declare the taxes upon property of the Detroit street railway, as appearing on the tax rolls of the City of Detroit null and void and for refund of 1963 and 1964 taxes. Judgment for plaintiff and for defendant members of board of street railway commissioners of City of Detroit. Board of Education of the School District of the City of Detroit appeals. Modified and affirmed.

*Murdoch J. Hertzog, in propria persona.*

*Manuel Zechman,* General Counsel, City of Detroit, department of street railways, for defendants Paul C. Ackerman, Clarence J. Krajenke, and Bernard F. Landuyt.

*Robert Reese,* Corporation Counsel, *John H. Witherspoon, Julius C. Pliskow,* and *Vance G. Ingalls,* Assistants Corporation Counsel, for defendants City of Detroit and city treasurer.

*Miller, Canfield, Paddock & Stone (George E. Bushnell, Jr., Richard A. Jones, Ira Jaffe,* and *Samuel J. McKim, III,* of counsel), for defendant Board of Education of the City of Detroit.

DETHMERS, J. Plaintiff filed complaint in this cause for declaratory judgment on May 6, 1964. He did this in his multiple capacity as resident and citizen of the city of Detroit, as taxpayer on real and personal property therein, and as a fare-paying patron of the Detroit city department of street railways. Defendants are the city, members of its common council, the city treasurer, members of the board of street railway commissioners, and the board of education of the school district of the city of Detroit, all the persons being sued in their official capacities and not individually.

The ultimate, overall issue, with intermediate questions to be considered, is whether the department of street railways, hereinafter called the DSR, is required to pay ad valorem taxes on its real and personal property situated in the city of Detroit to defendant city or its treasurer for and as determined and certified by the defendant school district.

Involved are the taxes so paid under protest by the DSR for the years 1963 and 1964. Relief sought by plaintiff is a declaratory judgment finding that those taxes, appearing on the city's tax rolls upon the DSR property, are illegal, void and a nullity, requiring the DSR board members to bring necessary proceedings to obtain a refund from the defendant treasurer of the payments made, or that

the treasurer make such refund, or that defendant city council show cause why it should not grant the DSR petition previously addressed to it to pass a resolution requiring the treasurer to make the refund, and why the DSR property should not be removed from the city tax rolls and the refund be made.

Plaintiff says that he is entitled to the relief sought because the exaction of what he terms the unlawful tax from DSR injures him and other present and potential fare-paying patrons of DSR in that it deprives them of the use and benefit which otherwise would be derived from the use of the large sums paid for taxes in furtherance of the transportation system and its equipment and service.

A show cause order was issued as prayed by plaintiff. The defendant board of education, hereinafter called appellant, prayed for a summary judgment dismissing with prejudice the action against it, on the following grounds:

A. The complaint failed to state a cause of action against it.

B. The DSR is required to pay the taxes by the Detroit city charter, title 4, chap 13, § 14.

C. The appellant is a State agency within the purview of subdivision (1) of section 4f of the home-rule act, being PA 1909, No 279, as amended by PA 1955, No 26 (CLS 1961, § 117.4f [Stat Ann 1963 Cum Supp § 5.2079]), which requires payment of State taxes by the publicly owned utility.

The appellant's motion was denied. The DSR filed a motion for summary judgment in its favor granting in substance the same relief sought by plaintiff. The trial court filed an opinion holding for plaintiff and for the DSR and entered a declaratory judgment accordingly.

The appellant filed claim of appeal to this Court. Then appellant filed claim of appeal in the Court of Appeals. Thereafter, this Court granted appellant's application for leave to appeal to this Court prior to decision by the Court of Appeals, as provided and permitted under GCR 1963, 852, as modified by GCR 1963, 800.12(1). Thus, the case is now before us for decision.

Appellant relies, in support of its position that plaintiff's petition should be dismissed on the following statutory and charter provisions:

Subdivision (1) of section 4f of the home-rule act, PA 1909, No 279, as amended by PA 1955, No 26 (CLS 1961, § 117.4f [Stat Ann 1963 Cum Supp § 5.2079]), which provides, with respect to a city owned transportation utility, in part, as follows:

"When a transportation utility is so acquired, State and county taxes shall be paid thereon *as if privately owned,* also local taxes on any portion of such property lying outside of the city limits." (Emphasis supplied.)

The Detroit city charter, title 4, chap 13, § 14, reads, in part, as follows:

"The rate of fare on said street railway system shall be sufficient to pay, and the said board shall cause to be paid:     *   *   *
"(b) Taxes on the physical property of the entire street car system, *the same as though privately owned.*" (Emphasis supplied.)

Section 53 of the general property tax act (CL 1948, § 211.53, as amended by PA 1962, No 133 [Stat Ann 1965 Cum Supp § 7.97]), provides, in part, as follows:

"Any person may pay the taxes or special assessments, or any one of the several taxes or special assessments, on any parcel or description of land,

or on any undivided share thereof, and the treasurer shall note across the face of the receipt in ink any portion of the taxes or special assessments remaining unpaid. He may pay any tax or special assessment, whether levied on personal or real property, under protest, to the treasurer, specifying at the time, in writing, signed by him, the grounds of such protest, and such treasurer shall minute the fact of such protest on the tax roll and in the receipt given. The person paying under such protest may, within 30 days and not afterwards, sue the township for the amount paid, and recover, if the tax or special assessment is shown to be illegal for the reason shown in such protest."

Also pertinent here are the provisions of section 196 of the school code of 1955 (CLS 1961, § 340.196 [Stat Ann 1959 Rev § 15.3196]), reading, in part, as follows:

"The board shall thereafter adopt a budget in the same manner and form as required for its estimates and determine the amount of tax levy necessary for such budget and shall certify on or before the Wednesday following the first Monday in June said amount to the assessing officers of the city who shall apportion the school taxes, together *with other taxes of the city;* the amount so apportioned shall be assessed, levied, collected and returned for the school district in the same manner as taxes of the city; and the city treasurer shall return to the school district its portion of the total tax collections on a percentage basis; Provided, however, That the tax levied by the board may in the discretion of the legislative body of the city be stated separately on each tax bill." (Emphasis supplied.)

In that connection the Detroit city charter, title 6, chap 4, § 33, provides:

"Sec. 33. State, County and School Taxes: * * * School taxes for the purposes of the board

of education of the city of Detroit shall be levied and collected the *same as other city taxes.*" (Emphasis supplied.)

Appellant reasons that a school board is a State agency, that therefore taxes for its support are State taxes and, hence, under subdivision (1) of section 4f, above quoted, DSR is required to pay those taxes. Whether or not appellant is a State agency is not controlling of the main issue in this case. The question, rather, is what the legislative intent was as expressed in the enactment of the home-rule act and its authorization of municipal acquisition of a transportation utility, and, particularly, its subdivision (1) of section 4f and the term "State taxes" therein contained.

At the time of enactment of the home-rule act, PA 1909, No 279, and at the time of the amendment thereof by PA 1929, No 126, with its use of the said term "State tax" in subdivision (1) of section 4f, there was assessed annually under the general property tax act (see CL 1897, § 3858; CL 1929, § 3423) a tax "to be raised for State purposes". This continued until adoption of the sales tax act in 1933. In directing the manner of assessment of the several taxes under the general property tax act (see CL 1897, § 3862; CL 1929, § 3428) the statute provided that the assessor should enter the several taxes in separate columns, as follows: "All school taxes and the 1 mill tax in one column * * * and the State taxes in another column." This clearly evidences a legislative intent that school taxes and State taxes were not to be considered the same. In speaking of State taxes in subdivision (1) of section 4f the legislature must be deemed to have used the term in the sense in which it was understood at the time. *Husted* v. *Consumers*

*Power Company,* 376 Mich 41. We are satisfied that "State taxes" as used in subdivision (1) of section 4f meant and means in the quoted language of CL 1929, § 3423, "taxes to be raised for State purposes" and that these were not the same as school taxes which CL 1929, § 3428, required to be entered by the assessor in separate columns.

Next it will be observed, in the above quoted section 196 of the school code of 1955, that in providing for adoption of a budget by the school board and determination by it of the amount of tax levy necessary for such budget and certification thereof to the assessing officers of the city, the latter are directed to "apportion the school taxes, together with *other* taxes of the city". The language is eloquent of the fact that in legislative contemplation, even in these latter days, taxes for support of local schools and State taxes are not the same.

We hold, therefore, that subdivision (1) of section 4f does not impose upon DSR the burden of paying the taxes in question.

Appellant's next reliance is on the language of above quoted city charter, title 4, chap 13, § 14. We agree with the trial court that it should be deemed to be only a provision relating to fixing of fares, and not an imposition of a tax on the DSR. If it were the latter, we observe that no authority therefor in the State Constitution or statute has been called to our attention. On the contrary, it would appear to clash with the provision in the statute (section 4f[1]) that the utility shall pay on its property State taxes, which we hold these are not, and "also local taxes on any portion of such property lying outside of the city limits". The implication is clear that it is not to pay local taxes on property within the city limits. The charter may not and cannot validly provide otherwise.

Finally, appellant directs attention to section 53 of the general property tax act, as hereinbefore set forth, and its provision that any person may pay taxes on property under protest, and sue to recover same "within 30 days and not afterwards". This suit was not brought within 30 days of payment of the tax. The trial court, in its opinion, said:

"In raising such legal question, defendants have failed to take into consideration that this cause does not involve an action by a taxpayer to obtain a refund of taxes voluntarily or involuntarily paid in the usual contest of such proceedings. Instead, this cause seeks in accordance with the provisions of GCR 1963, 521, a judicial declaration of the legal positions of the respective parties with relation to obtaining a bookkeeping credit for money transferred from a department of the city of Detroit to the treasurer thereof.

"Relief granted to the plaintiff and cross-complainant in this cause will result only in the transfer of funds from 'one pocket of the city of Detroit to another pocket of the city of Detroit' and no actual physical payment or retention of money by a taxpayer will result therefrom."

This language of the trial court is said to be erroneous in that a holding for plaintiff would involve more than "the transfer of funds from one pocket of the city of Detroit to another pocket of the city of Detroit", with "no actual physical payment or retention of money by a taxpayer". Instead, according to appellant's position, a finding for plaintiff would result in less tax money for it and more money for the DSR. To this the appellees say that under the provisions of the above quoted CLS 1961, § 340.196 (Stat Ann 1959 Rev § 15.3196), after the school board adopts a budget and certifies to the assessing officers of the city the amount of tax levy necessary for such budget, it becomes the

duty of city officers to apportion the school taxes, assess, levy, and collect same, and the city treasurer shall return to the school district its portion. So, say appellees, the appellant is entitled to and will receive the amount of its budget as thus certified, regardless of whether the assessors correctly or incorrectly assess the same against specific properties. This, by implication, appears to be urged as support for the trial court's expressed view that no recovery of taxes by a taxpayer but only a transfer of funds from one of the city's pockets to another is here involved and, hence, the 30-day limitation for suit has no application.

Whatever may be said in that connection, a more dispositive factor is that plaintiff, in the capacities above noted and especially as a fare-paying patron of the DSR, is a proper party to bring this action and that declaratory judgment is an appropriately sought remedy. Neither the statutory provisions formerly pertaining to declaratory judgments (CL 1948, § 691.501 *et seq.* [Stat Ann § 27.501 *et seq.*]) nor the presently governing GCR 1963, 521 have expressly provided for a time limitation for bringing suit for a declaratory judgment. Reference is made to annotations commencing at 151 ALR 1076. The assumption in the discussions there is that in the jurisdictions considered "there is no particular limitation applicable specifically to declaratory actions" and that there is "a blanket provision fixing the time of institution of all other actions for which no specific limitation has been prescribed by the other sections of the statute" (like the 6-year blanket provision in Michigan [CLS 1961, § 600.5813 (Stat Ann 1962 Rev § 27A.5813)]). These annotations have to do largely with the problem of when limitations of actions start running in suits for declaratory relief rather than what the limitation shall be

or is. Interestingly, however, the annotations follow the report of *Maguire* v. *Hibernia Savings & Loan Society*, 151 ALR 1062 (23 Cal 2d 719; 146 P2d 673), in which the California court is of the view that, absent a limitation in the statute itself providing for declaratory relief (p 1074), "The period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief." Such view should alleviate any fears that granting plaintiff the relief sought as to the 1963 tax would open the door as well to refund of the 1953 or 1943 tax. Our ordinary statute of limitations and its above cited blanket provision should take care of the expressed concern over according excessive retroactivity to declaratory relief.

The citation, in this connection, of *Finlayson* v. *Township of West Bloomfield*, 320 Mich 350, is scarcely more comforting for appellant. There plaintiffs, as electors, sought by suit for declaratory judgment to test the validity of a township election. A special statute (CL 1929, §§ 15298, 15299 [Stat Ann §§ 27.2342, 27.2343]) provided for such test by petition for quo warranto to be filed within 30 days after the election. The holding in the case was (1) that suit for declaratory judgment would not lie because the statute had provided plaintiffs with the needed remedy exclusively by petition for quo warranto and (2) that the 30-day limitation in that statute would not permit remanding of a suit for declaratory judgment, brought after the 30-day period had run, for consideration by the trial court as a quo warranto action. This decision has no bearing on plaintiff's situation here, in which he properly proceeded by petition for declaration of rights because he had no special, exclusive, statutorily created right to sue within 30 days for and

to recover the amount paid. That applied to the taxpayer, not to plaintiff.

We hold that plaintiff is a proper party plaintiff and, as such, has a personal right to bring this suit. It is not derivative. His right in that respect could not be prejudiced, limited, or destroyed by the disinterest, neglect, or ignorance of the DSR. Whether the latter chose to pay the tax voluntarily or under protest or to sue within 30 days thereafter, or later, or not at all, could not destroy plaintiff's right to a declaratory judgment. Accordingly, the statutory 30-day limitation on suit by taxpayer to recover taxes paid by him under protest is not applicable to plaintiff in this action.

Note is taken of the language of State act and ordinance, above, that when the municipally owned utility is to pay taxes on its property it shall be "the same as though privately owned" or the taxes shall be paid thereon "as if privately owned". Whether private ownership should be thus protected against the unfair competition of a publicly-owned utility benefited by exemption from tax liability, is a policy matter not for court consideration. That belongs only in the legislative realm.

Affirmed. No costs, a public question being involved.

O'HARA, J., concurred with DETHMERS, J.

ADAMS, J. (*concurring in part*). I agree with Justice DETHMERS' construction of CLS 1961, § 117.4f (Stat Ann 1963 Cum Supp § 5.2079), and his conclusion that the property of the board of street railway commissioners of the city of Detroit, hereinafter referred to as the DSR, is not subject to taxation by the city or school district of Detroit. I do not agree that the DSR can be granted a refund of its 1963 tax.

As a general rule, a taxpayer suing for refund must establish involuntary payment of the tax. Voluntary payment bars recovery. *National Bank of Detroit* v. *City of Detroit*, 272 Mich 610, 614, 615; 13A West's Michigan Digest, Taxation, § 538.

Section 53 of the general property tax act (CL 1948, § 211.53, as amended by PA 1962, No 133 [Stat Ann 1965 Cum Supp § 7.97]), a statutory exception to the rule, created a right to recover taxes paid, if such payment was accompanied by written protest *and suit was instituted to recover the taxes within 30 days.* This Court held in *General Discount Corp.* v. *City of Detroit*, 306 Mich 458, 465:

"The effect of [section 53] was merely to make payment of an invalid tax under protest involuntary irrespective of any question of compulsion. When taxes are paid under actual duress the rule both before and since the statute is that protest is unnecessary."

There is no claim in this case of involuntary payment. The question is whether section 53 bars recovery because of failure to sue within 30 days of payment and protest.

The trial judge relied upon a city charter provision[1] allowing, by a two-thirds vote of the common council, refund of taxes illegally assessed or collected. He held that a taxpayer who had not complied with section 53 could make application to the common council for a refund. Even if this be correct, the taxpayer who wishes to appeal an adverse determination of the council must either comply with section 53 or establish that payment was involuntary. The decision relied upon by the trial judge, *Blanchard* v. *City of Detroit*, 253 Mich 491, 493, involved the *involuntary* payment of an assess-

---

[1] Title 6, chap 4, § 30, effectuated by chapter 73, § 1, Ordinance 80-D, of the Compiled Ordinances of the City of Detroit (1954).

ment. That taxpayer did not require section 53 for relief.

The question of the relation of a city charter provision to section 53 was decided in *Paul* v. *City of Detroit*, 318 Mich 545, 551. It was held that an action to recover property taxes paid to a city is governed by the statute setting forth the procedure for doing so rather than by a provision of the city charter not in accord with the statute. Since this suit was not brought within 30 days, section 53 bars recovery. *National Bank of Detroit* v. *City of Detroit, supra; General Discount Corp.* v. *City of Detroit, supra; Paul* v. *City of Detroit, supra; Haggarty* v. *City of Dearborn*, 332 Mich 304.

The trial judge (quoted in Justice DETHMERS' opinion) held that the status of the DSR, as a branch of the city of Detroit, precluded operation of general principles of law relating to a tax refund, and that this suit involves only a transfer from "one pocket of the city of Detroit to another pocket of the city of Detroit." This assumes either (1) that the board of education is another division of the city of Detroit or (2) that the city of Detroit will not attempt to recoup the refund to the DSR from future tax collections allocable to the board of education.

Nothing in the law or the record supports either assumption. The board of education is not a part of the city of Detroit. It is a separate legal entity. The most concise statement of this proposition was made by Justice COOLEY in *Board of Education* v. *City of Detroit*, 30 Mich 505, 510:

"The board of education, though existing for purposes strictly public, is nevertheless a distinct corporation from the city, having its distinct property and funds, and entitled to demand for them the same protection which may be demanded by other corporations or individuals."

See the cases collected, 12A West's Michigan Digest, Schools and School Districts, § 21. See, also, 78 CJS, Schools and School Districts, § 25b, p 661; 10 MLP, Education, § 21, p 158; CLS 1961, § 340.192 (Stat Ann 1963 Cum Supp § 15.3192).

The board of education alone determines the annual tax needs of the school district. CLS 1961, § 340.196 (Stat Ann 1959 Rev § 15.3196). The city of Detroit performs the ministerial task of collection. The board of education is limited in the amount that may be collected for it. Article 9, § 6, of the Michigan Constitution of 1963 establishes a 15-mill maximum tax rate which, together with millage authorized by the city charter, is the limit past which no property can be taxed without a vote of the property owners. (See, generally, CL 1948 and CLS 1961, § 211.201 *et seq.* [Stat Ann 1960 Rev and Stat Ann 1965 Cum Supp § 7.61 *et seq.*]). Where the maximum millage is reached, each "local unit" (CLS 1961, § 211.202 [Stat Ann 1965 Cum Supp § 7.62]) receives a given number of mills with the surplus left over being allocated among "local units" according to their needs. (CLS 1961, § 211.211 [Stat Ann 1965 Cum Supp § 7.71]). Whenever this amount proves insufficient as it has in Detroit, unless the property owners authorize a millage increase, the local unit, *i.e.,* in this case the board of education, must do without. The more the tax base is eroded, the more the board of education must do without.

The DSR paid 1963 real and personal property taxes totaling $554,545.54. The board of education's portion of this tax collection is $240,163.41. CLS 1961, § 340.196 (Stat Ann 1959 Rev § 15.3196), provides in part:

"The city treasurer shall return to the school district its portion of the total tax collections on a

percentage basis: * * * the tax levied by the board may in the discretion of the legislative body of the city be stated separately on each tax bill."

The city treasurer is a collection agent for another separate local governmental unit—the school board—and as such he is obliged to remit to the board of education only "its portion of the total tax collections." How can it be said that a tax ordered refunded to the taxpayer has been paid? To recoup any overpayment, the city treasurer has only to withhold same from future payments due to the board of education.

The DSR stood in the position of a taxpayer to the city of Detroit *and the board of education* prior to decision in this case. It may be there will be no less in the city of Detroit's pocket if it refunds to its alter ego, the DSR, the tax paid to it. This is not true, however, with regard to the board of education, a separate unit of government. The transfer of funds back to the DSR can only result in a loss to it of $240,163.41, its share of the total tax collection from the DSR by the city.

The declaratory judgment entered by the circuit judge reads, in part, as follows:

"It is ordered and adjudged that the said defendant and cross-complainant, the board of street railway commissioners of the city of Detroit, recover of the city of Detroit, a municipal corporation, and Chas. N. Williams, treasurer of the city of Detroit, *and treasurer of the board of education of the city of Detroit,*[2] defendants, the said sum of $554,545.54, being the sum paid by said defendant and cross-complainant to said treasurer for real and personal city *and school taxes for 1963.*" (Emphasis supplied.)

---

[2] CLS 1961, § 340.193 (Stat Ann 1959 Rev § 15.3193).

The final question is whether plaintiff, a taxpayer seeking a declaratory judgment, is to be permitted, under color of such a judgment, to obtain for the DSR a refund of 1963 taxes which the DSR itself cannot obtain.[3] Such a result transforms the "rights and other legal relations" (GCR 1963, 521.1, Declaratory Judgments) of those primarily interested in this litigation and gives to a declaratory judgment a retroactivity wholly beyond its scope or purpose. If plaintiff can secure refund of the 1963 tax for the DSR, why not the 1953 or the 1943? Hertzog's right to obtain a refund for the DSR is derivative. He stands in no better position than the DSR nor is he entitled to any greater declaration of rights than it could obtain.

I vote to deny a refund of the 1963 taxes and to affirm the trial judge on all other points. No costs, a public question being involved.

T. M. KAVANAGH, C. J., and KELLY and SMITH, JJ., concurred with ADAMS, J.

SOURIS, J. I agree with Mr. Justice DETHMERS that plaintiff had a right to bring this suit for declaratory relief under GCR 1963, 521. I also agree that plaintiff's right to seek a declaratory judgment defining the DSR's *prospective* liability for city and school taxes, under CLS 1961, § 117.4f (Stat Ann 1963 Cum Supp § 5.2079), was not foreclosed by

---

[3] In *Finlayson* v. *Township of West Bloomfield*, 320 Mich 350, plaintiffs brought suit for declaratory judgment seeking to have an election declared void. They had not complied with the statutory procedure which required that such a suit be brought within 30 days of the election. In 22 Am Jur 2d, Declaratory Judgments, § 78, pp 940, 941, the *Finlayson Case* is cited for the following proposition: "Where a special statute of limitations applies to a special statutory proceeding, it will be applied when a declaratory judgment is sought to achieve the same result as the special proceeding." See; also, 26 CJS, Declaratory Judgments, § 108b, p 241; Annotation, Statute of limitations or doctrine of laches in relation to declaratory actions, 151 ALR 1076.

any action or inaction of the DSR. Finally, I agree with Justice Dethmers' interpretation of CLS 1961, § 117.4f (Stat Ann 1963 Cum Supp § 5.2079).

Nonetheless, I agree with Mr. Justice Adams' conclusion that plaintiff may not, by this action, obtain a judgment ordering a refund to the DSR of local and school taxes paid by it in 1963. Plaintiff was entitled in this suit to have adjudicated the rights and liabilities of the DSR with respect to the taxes sought to be imposed upon it. Under CL 1948, § 211.53, as amended by PA 1962, No 133 (Stat Ann 1965 Cum Supp § 7.97), the DSR had a right to recover the 1963 taxes paid only if the taxes were paid under protest[1] *and* suit for their recovery was begun within 30 days of payment. This the DSR did not do, and the commencement of this suit could not restore to the DSR rights which it already had waived. By failing to comply with the above-cited statutory provision, the DSR waived its right to recover the 1963 taxes paid by it. Thus, an action brought by the DSR or by anyone else to declare, *inter alia,* the rights of the DSR with regard to those 1963 taxes could result only in a declaration that the DSR had waived any right it had to recover those taxes.

The instant case should be distinguished from one in which recovery is sought for taxes paid under a mistake of fact. In the latter circumstance it is the law in Michigan that the taxpayer may recover even if the taxes were not paid under protest. *Spoon-Shacket Company, Inc.,* v. *County of Oakland* (1959), 356 Mich 151, in which the Court overruled *Consumers Power Company* v. *Township of Muskegon* (1956), 346 Mich 243, and adopted the reasoning of Mr. Justice Talbot Smith's dissenting

[1] A portion of the 1963 taxes was paid under protest, but the DSR failed to pursue its judicial remedy provided by the cited statute.

opinion in that case. Unlike the mistakes of fact
involved in *Spoon-Shacket* and *Consumers Power*,
and in *Farr* v. *Nordmen* (1956), 346 Mich 266, the
instant case involves what Justice TALBOT SMITH
in *Consumers Power* (p 262) by reference to the
Restatement of Restitution, § 75, denominated pay-
ment of " 'void taxes and assessments' ". Justice
TALBOT SMITH commented (pp 262, 263):

"Confusion between such cases [relating to the
recovery of void taxes and assessments], and the
case before us, involving one of the simplest of the
mistakes of fact (double, or manifold, payment of
the same tax) is noted in portions of the briefs
before us. Here the person paying (*i. e.*, 'where a
person pays for the second time a tax due from him
personally') is clearly and undisputably entitled to
restitution of the amount so paid, whatever the sit-
uation may be as to 'void and illegal taxes.' The 2
situations involve different policy considerations,
are differently resolved in the cases and treatises,
and should not be muddled by us."

Thus, while in Michigan recovery may be had for
taxes paid under a mistake of fact, there is no au-
thority for a like recovery of void taxes and assess-
ments, see *National Bank of Detroit* v. *City of De-
troit* (1935), 272 Mich 610, 614, 615, absent com-
pliance with the statutory requirement of payment
under protest accompanied by suit within 30 days
thereof.

Subject to the foregoing, I concur in affirmance
of the trial judge's order, but only insofar as it
voids school and city taxes levied in 1964 and there-
after against the property of the board of com-
missioners under authority of CLS 1961, § 117.4f
(Stat Ann 1963 Cum Supp § 5.2079).

BLACK, J., took no part in the decision of this case.